FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(1) __Jasper Rivera__  __#10581-078__
(Name of Plaintiff)    (Inmate Number)

__P.O. Box 1000, Lewisburg, PA 17837__
(Address)

(2) _____
(Name of Plaintiff)    (Inmate Number)

_____
(Address)

(Each named party must be numbered,
and all names must be printed or typed)

vs.

(1) __United States of America__

(2) _____

(3) _____
(Names of Defendants)

(Each named party must be numbered,
and all names must be printed or typed)

(Case Number): __3: CV 12-1339__

CIVIL COMPLAINT

FILED
WILLIAMSPORT, PA
JUL 11 2012
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

TO BE FILED UNDER: ____ 42 U.S.C. § 1983 - STATE OFFICIALS

____ 28 U.S.C. § 1331 - FEDERAL OFFICIALS

__X__ 28 U.S.C. § 1346 and 28 U.S.C. § 2671, et seq. Federal Tort Claims Act

I. PREVIOUS LAWSUITS

A. If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

__N/A__

1

II. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

  A. Is there a prisoner grievance procedure available at your present institution? _X_ Yes ___ No

  B. Have you fully exhausted your available administrative remedies regarding each of your present claims? _X_ Yes ___ No

  C. If your answer to "B" is Yes:

   1. What steps did you take? _Filed tort claim form 95, received by Regional Counsel on July 14, 2011. Claim No. TRT-NER 2011-05721_

   2. What was the result? _Denied by Regional Counsel on January 13, 2012. See attached letter from Regional Counsel. (Exhibit 1)_

  D. If your answer to "B" is No, explain why not: _____

III. **DEFENDANTS**

  (1) Name of first defendant: _United States of America_
   Employed as _____ at _____
   Mailing address: _____
  (2) Name of second defendant: _____
   Employed as _____ at _____
   Mailing address: _____
  (3) Name of third defendant: _____
   Employed as _____ at _____
   Mailing address: _____
   (List any additional defendants, their employment, and addresses on extra sheets if necessary)

IV. **STATEMENT OF CLAIM**

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets if necessary.)

  1. _See attached pages 4-7_

2

2. _____

3. _____

### V. RELIEF

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

1. _See attached pages. 7-8_

2. _____

3. _____

Facts

1.  From on or around April 20, 2009, to the present, Plaintiff Jasper Rivera has been incarcerated at United States Penitentiary (USP) Lewisburg.

2.  In 2008, USP Lewisburg was converted into predominately a Special Management Unit (SMU), a lockdown facility that houses inmates who have been deemed difficult to manage in other institutions for having disciplinary issues or gang involvement.

3.  The staff at USP Lewisburg is aware that the inmates are ones who were difficult to manage at other institutions.

4.  At all times since Plaintiff Rivera has been at USP Lewisburg he has been in the Special Management Unit (SMU).

5.  Prior to the time period encompassed by this Complaint, inmate on inmate assaults, including stabbings, were pervasive in the recreation cages at USP Lewisburg.

6.  Prison staff and the prison administration were aware of the pervasiveness of these assaults in the recreation cages in the SMU.

7.  Plaintiff is a gang dropout.

8.  In the gang culture of the BOP, dropping out of a gang may bring serious threats of violence and backlash from current gang members.

9.  Prison staff and the prison administration are aware of this gang culture and what can happen to a gang dropout.

10. Upon arrival at USP Lewisburg, all inmates participate in a Quay Hearing.

11. The Quay hearing is used by the administration to identify an inmate's potential enemies so prison officials can make informed decisions to avoid cell and recreation cage placements that may place an inmate's life in danger.

12. Plaintiff participated in his Quay hearing shortly after arriving at USP Lewisburg.

13. Plaintiff informed prison officials at his Quay hearing of his ex-gang status and any currently known and potential enemies he may have at USP Lewisburg.

14. In the SMU, inmates are confined to their cells for 24 hours a day. They are permitted to have one hour of recreation time five days a week.

15. In the SMU, inmates are always placed in restraints whenever they are out of their cell except when they are placed in the recreation cage.

16. The only time an inmate is present with another inmate un-restrained is either while they are in their cell or in the recreation cages.

17. During the recreation time inmates are put into a recreation cage, consisting of metal mesh walls and a concrete floor, with generally four to six other inmates.

18. Inmates have no choice in which recreation cage they are placed, or with whom they are placed. The recreation cage placements are pre-arranged by staff.

19. For the month of April 2010, Plaintiff was placed in recreation cages with inmate Nicholas Turning Bear, among others.

20. It is believed that during this time period inmate Turning Bear was an active gang member.

21. On or about April 30, 2010, inmate Turning Bear confronted Plaintiff while they were together in the recreation cage about his "ex-gang" status.

22. Plaintiff confirmed to inmate Turning Bear that he was a gang dropout.

23. Because of Turning Bear's gang status, despite being in a different gang, Turning Bear and Plaintiff agreed that they could no longer be in the recreation cage together.

24. Both Plaintiff and Turning Bear made staff aware that they no longer could be placed in the same recreation cage and that they should be separated or possible violence may ensue.

25. Staff and the administration are aware of the gang culture where members of one gang may recruit another gang to assault their gang's enemies. Enemies can include any gang dropouts.

26. After staff was informed on or about April 30, 2010, that there was a strong risk of violence if Plaintiff and Turning Bear continued to be placed in the same recreation cage together, staff separated them during their recreation time.

27. For approximately two weeks Plaintiff was placed in a recreation cage only with his cellmate.

28. Despite staff and the administration being made aware of the need for separation of Plaintiff and Turning Bear, they again were placed in the same recreation cage in early June, 2010.

29. Staff is aware that the majority of violence acts that occurred during this time period between inmates happened in the recreation cages as this is the only time inmates are together and not restrained.

30. As in all BOP facilities, inmates are prohibited to have or make weapons at USP Lewisburg.

31. It is staff's duty to ensure the safety of inmates, especially when staff and the administration are on notice of the possibly of violence between two inmates.

32. It is the staff's duty to search inmates and their cells to ensure they are not hiding weapons.

33. On or about June 4, 2010, Plaintiff and inmate Turning Bear were placed in the same recreation cage.

34. At the end of the recreation period, as Plaintiff was about to exit the recreation cage inmate Turning Bear attacked Plaintiff from behind.

35. Turning Bear punched, kicked and attacked Plaintiff with a metal shank.

36. As this was the end of the recreation period, several staff members were present and an officer needs assistance call was believed to have been made. This is called "hitting the deuces".

37. Staff made verbal commands for Turning Bear to stop the assault of Plaintiff but he did not comply.

38. Plaintiff tried to defend himself the best he could but eventually Turning Bear pinned Plaintiff down on the ground and attempted to stab him with the mental shank in the chest.

39. It is believed that at this time there was at least two staff members armed with pepper ball guns in the gun ports of the cage rec that could have been used to stop the assault before Plaintiff received life threatening injuries.

40. Plaintiff was stabbed approximately 15 times to the face, chest, stomach and back in the presence of numerous staff.

41. Plaintiff received multiple stab wounds and his injuries included a punctured lung. He was transported to Geisinger Medical Center in critical condition where he underwent emergency surgery.

42. Plaintiff was hospitalized at Geisinger Medical Center for six days in serious condition.

43. It is believed staff recovered a 7" mental shank from the recreation cage where this assault took place.

44. Prison staff has a responsibility to protect all inmates in their custody and control and to keep them safe from violence or other harm, including Plaintiff Rivera.

45. The USP Lewisburg staff and corrections officers were at all times relevant to this Complaint employed by the Bureau of Prisons.

46. At all times relevant to the Complaint, the USP Lewisburg staff and corrections officers were acting within the scope and course of their employment with the Bureau of Prisons.

47. As a direct and proximate result of the conduct of the USP Lewisburg staff and corrections officers, Plaintiff suffered substantial damages, including pain and suffering, physical impairment, emotional distress and harm.

48. Plaintiff Rivera satisfied all available administrative remedies under the Federal Tort Claims Act.

Cause of Action

Count I

Federal Tort Claims Act – Negligence

48. Plaintiff incorporates by reference paragraphs 1-48, as if fully set forth in this paragraph.

49. The staff at USP Lewisburg owed a duty to Plaintiff Rivera, breached their duty to him, and this breach of duty was a direct and proximate cause and a substantial factor in bringing about Plaintiff Rivera's damages outlined above.

50. The action of the staff at USP Lewisburg constitute the tort of negligence under the laws of the Commonwealth of Pennsylvania.

51. Under the Federal Tort Claims Act, defendant United States of America is liable for these actions.

Relief

WHEREFORE, Plaintiff Jasper Rivera demands judgment against the Defendant, the United States of America, as follows:

a. Award compensatory damages not in excess of $12,000.00;
b. Award Plaintiff costs, expenses and attorney's fees associated with the prosecution of this lawsuit;
c. Award Plaintiff post-judgment interest; and,
d. Award such other and further relief as this Court may deem appropriate.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this \_\_\_8TH\_\_\_ day of \_\_\_July\_\_\_, 20\_12\_.

_____
(Signature of Plaintiff)

9



**U.S. Department of Justice**

Federal Bureau of Prisons
Northeast Regional Office

*Via Certified and Return-Receipt Mail*

---

U.S. Custom House-7th Floor
2nd & Chestnut Streets
Philadelphia, PA. 19106

January 13, 2012

Jasper Rivera, Reg. No. 10581-078
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

RE: Administrative Tort Claim No. TRT-NER-2011-05721

Dear Mr. Rivera:

Your Administrative Tort Claim No. TRT-NER-2011-05721, properly received in this office on July 14, 2011, has been considered for settlement as provided by the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2672, under authority delegated to me by 28 C.F.R. § 543.30. You seek compensatory damages in the amount of $12,000.00 for an alleged personal injury. Specifically, you claim staff was negligent by not separating you and the assailant and by not responding quickly to the assault on July 6, 2010.

After careful review of this claim, I have decided not to offer a settlement. Investigation reveals another inmate assaulted you in the recreation area on June 4, 2010 (not July 6, 2010 as alleged in the claim). Staff responded immediately to the assault and you were medically assessed and treated accordingly. Staff was not informed or aware of any separation concerns between you and the assailant. There is no evidence to suggest you experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons employee. Accordingly, your claim is denied.

If you are dissatisfied with this decision, you may bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this memorandum.

Sincerely,

Michael D. Tafelski
Regional Counsel

cc: B.A. Bledsoe, Warden, USP Lewisburg

Exhibit 1