PJS:JJB:mel

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASPER RIVERA, | : | No. 3:CV-12-1339 |
| Plaintiff | : | |
| | : | |
| | : | (Kosik, J.) |
| V. | : | (Carlson, M.J.) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant | : | Filed Electronically |

## BRIEF IN SUPPORT OF THE UNITED STATES' MOTION SUMMARY JUDGMENT

### I.  Procedural History

Plaintiff, Jasper Rivera, is an inmate formerly incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg").  On July 11, 2012, Rivera initiated this action with the filing of a Complaint against the United States of America, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. Rivera seeks $12,000.00 in damages, claiming prison officials failed to protect him from assault by another inmate on or about June 4, 2010.  More specifically, Rivera

avers that: (1) he should have been "separated" from inmate Nicholas Turning Bear and not placed in the same recreation cage as him; (2) staff had a duty to search inmates and their cells for weapons; (3) staff were delayed in breaking up the assault. Compl. (Doc. 1).

On October 24, 2012, a Motion for Summary Judgment was filed on behalf of the United States. On November 7, 2012, the United States was granted an enlargement of time to file its supporting brief. The United States submits the instant brief in support of its Motion for Summary Judgment.

## II. Factual Background

An assignment of "separation" is defined in the BOP's regulations as "[i]nmates who may not be confined in the same institution (unless the institution has the ability to prevent any physical contact between the separatees) with other specified individuals who are presently housed in federal custody or who may come into federal custody in the future." See Statement of Material Facts ("SMF") ¶ 1-5 (emphasis added). Rivera arrived at USP Lewisburg on April 21, 2009, with a list of separations, i.e., "specified individuals" which did not include inmate Nicholas Turning Bear. Id. ¶¶ 13-14. In fact, there are no requests to be separated from Turning Bear in Rivera's Central File. Id. ¶ 15.

USP Lewisburg staff are trained annually on a list of subjects, including escorting and searching inmates and responding to emergencies.  Id. ¶¶ 16-30.  Since 2009, that training has included Special Housing Unit/Special Management Unit operations.  Id. ¶ 17-20.

On June 4, 2010, escort officers were responsible for moving SMU inmates from their cells to recreation.  Id. ¶¶ 35-36, 38.  The process by which the inmate was escorted from his assigned cell to the recreation area commenced with the inmate placing his hands behind his back and through the slot in his cell door.  Id. ¶ 41.  Once the inmate was placed in hand restraints, the door to the cell was opened and the inmate stepped out.  Id. ¶¶ 42-43.  Each inmate was then visually observed, pat searched, and scanned with a hand held metal detector over his entire body, both front and back.  Id. ¶ 44.  The officer then escorted the inmate to the recreation area, placed the inmate in the recreation pen, and removed the restraints.  Id. ¶¶ 45-46.  No particular officer was assigned to escort any specific group of inmates.  Id. ¶ 39.  Thus, it is not clear as to who would have escorted inmate Turning Bear to recreation on that day.  Id. ¶ 37.

The escort officers' actions on that day were in accordance with their annual training and the procedures set forth in the Z Block's Special Post Orders.[1] Id. ¶¶ 16-22, 31-33.

On June 4, 2010, at approximately 12:20 p.m., Correctional Officer M. Raker saw Rivera being assaulted in a recreation pen. SMF ¶ 47. Officer Raker immediately called for assistance and ordered the assailant (inmate Nicholas Turning Bear) to stop, however, Turning Bear did not comply with the Officer's orders. Id. ¶¶ 48, 51. Staff responding to the call for assistance included Deputy Captain S. Snider and Correctional Officers Fisher and Hoffmaster. Id. ¶ 48. Deputy Captain Snider ordered Turning Bear to lay on the ground but the inmate refused three orders to completely comply. Id. ¶ 53. As a result, the Deputy Captain dispensed two rounds from the pepper ball launcher. Id. ¶ 54. Turning Bear complied with the order and laid down. Id. ¶ 55. Rivera exited the recreation pen on his own without assistance. Id. ¶ 56. He was placed in restraints, removed from the recreation pen, placed on a backboard, and accompanied to health services. Id. ¶ 58.

---

[1] "Post orders" can be described as guidelines of duties which staff must perform while assigned to a particular post.

Staff are trained that the staff ratio to inmates should always equal or exceed the number of inmates and that staff should never come into contact with unrestrained inmates unless they are on a work detail or orderly assignment.  Id. ¶¶ 22-25.  Additionally, in emergency situations, staff are trained that they should never attempt to enter an inmate's cell or recreation pen prior to a lieutenant arriving on the scene.  Id. ¶¶ 26, 27, 30.  It is the lieutenant who assesses the situation and the appropriate response.  Id. ¶ 28.  The lieutenant will not order the opening of a door until at least two staff members are present on the scene for each inmate involved in the emergency situation.  Id. ¶ 29.

In the instant case, once Turning Bear complied with the Deputy Captain's instructions, he was placed in restraints.  SMU, ¶ 59.  Records reveal that photographs were taken of Turning Bear, in restraints, at 12:25 p.m.  SMF, ¶ 59.  Thus, within just a 5-minute span, the attack upon Rivera had commenced, Officer Raker immediately called for assistance and ordered Turning Bear to stop, staff responded, Turning Bear was ordered to lay down on the ground three times, Deputy Captain Snider had launched two rounds from the pepper ball launcher, Turning Bear complied and laid down, Rivera had exited the pen, Turning Bear was restrained, and photographs of Turning Bear had been taken.  Id. ¶¶ 47-59.

At 12:26 p.m., an ambulance was called and at 12:35 p.m., ambulance paramedics entered the institution. Id. ¶¶ 60-61. The ambulance departed the institution with Rivera at 12:57 p.m. Id. ¶ 62.

On June 7, 2010, as a result of the altercation, Rivera and Turning Bear were "loaded" on the BOP's computerized SENTRY program as separations. Id. ¶ 63. The term "loaded" reflects that the inmates were loaded into the BOP's SENTRY computer system as separation inmates. Id. ¶ 64.

More than a year later, on July 6, 2011, Rivera submitted an administrative tort claim in the amount of $12,000.00 for personal injury, alleging staff was negligent by not separating him and his assailant and by not responding quickly to an assault on "July 6," 2010. Id. ¶¶ 65-66. Upon investigation, it was revealed that Rivera was assaulted in the recreation area on June 4, 2010, not July 6, 2010, as alleged in the claim. Id. ¶ 67. The tort claim was denied upon a determination that: (1) staff responded immediately to the assault and Rivera was medically assessed and treated accordingly; (2) staff was not informed or aware of any separation concerns between Rivera and his assailant; (3) there is no evidence to suggest that Rivera experienced a compensable loss as the result of negligence on the part of any BOP employee. Id. ¶ 68.

### III. Question Presented

Should the United States be granted summary judgment because: (1) the BOP's decisions of where and how to place inmates and how to respond to emergency situations are matters protected by the discretionary function exception of the FTCA; and (2) Rivera has failed to establish a prima facie case of negligence against prison officials regarding their search for weapons?

**Suggested Answer: Affirmative.**

### IV. Argument

**A.     Legal Standard**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party opposing the motion for summary judgment must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex, 477 U.S. at 325. Rather, the opposing party must support its argument by "citing to

7

particular parts of materials in the record" such as depositions, documents, affidavits, or declarations, or by demonstrating that the materials cited do not establish the absence of a genuine dispute.   Fed. R. Civ. P. 56(c)(1).   For the purpose of summary judgment, the Court should consider only those material facts about which there is no genuine dispute.

**B.      Rivera's claims under the FTCA for injuries due to staff not keeping him separated from Turning Bear and for the delay in responding to the emergency are barred by the discretionary function exception.**

Rivera seeks $12,000 in damages as a result of injuries sustained following an assault upon him by inmate Nicholas Turning Bear.   He avers that prison officials knew or should have known he was at risk of being harmed and that they ignored that risk.   See Compl. (Doc. 1).   More specifically, Rivera claims that, although he made staff aware that he should be separated from inmate Turning Bear and not placed in the same recreation cage due to his "ex-gang" status, staff ignored that request and placed them in the same recreation cage on June 4, 2010.   Id. ¶¶ 19-28. As a result, Rivera states he was attacked by Turning Bear "[a]t the end of the recreation period, as Plaintiff was about to exit the recreation cage."   Id. ¶ 34. Rivera states he was punched, kicked, and attacked despite staff's verbal commands to stop and he believes staff could have intervened sooner before he received life threatening injuries.   Id. ¶ 39.

8

A significant limitation on FTCA claims is imposed by 28 U.S.C. § 2680(a), which provides that the United States' liability may not be premised on a claim against a government employee which is "... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty...". To the extent an alleged act falls within the discretionary function exception, a court lacks subject matter jurisdiction. See Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998); Jurzec v. American Motors Corp., 856 F.2d 1116, 1118 (8th Cir. 1988).

The United States Supreme Court has adopted a two part inquiry with respect to § 2680(a). First, a court must decide if "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." If so, "the employee has no rightful option but to adhere to the directive." The challenged governmental action must be the product of "judgment or choice." Berkovitz v. United States, 486 U.S. 531, 536-37 (1988). "Conduct is not discretionary unless it involves an element of judgment or choice." Koch v. United States, 814 F.Supp. 1221, 1227 (M.D.Pa. 1993) (McClure, J.).

If the act was discretionary under the first step, then the second part of the inquiry requires the judgment or choice be based on "considerations of public policy." Berkovitz, 486 U.S. at 537. The primary focus of the second part is "on

9

the nature of the actions taken and on whether they are susceptible to policy analysis." United States v. Gaubert, 499 U.S. 315, 325 (1991).

The United States' duty of care owed to a federal prisoner is set forth in 18 U.S.C. § 4042. Although "[t]he Government is not an insurer of the safety of a prisoner," the BOP must exercise ordinary diligence to keep prisoners safe and free from harm. Jones v. United States, 534 F.2d 53, 54 (5th Cir. 1976); see also Hossic v. United States, 682 F. Supp. 23, 25 (M.D.Pa 1987) (18 U.S.C. § 4042 establishes "ordinary diligence" standard of care for prisoner negligence suits under the FTCA). Prison officials are therefore obliged "to exercise reasonable care and diligence to protect the prisoner from danger, known to or which might reasonably be apprehended by him." Hossic, 682 F.Supp. at 25 (quoting Muniz v. United States, 280 F. Supp. 542, 547 (S.D.NY 1968)).

In the instant case, Rivera alleges he told several staff prior to the June 4, 2010, incident that he could not be assigned to a recreation pen with Turning Bear. Compl. (Doc. 1) ¶ 24. However, there is no evidence that Rivera ever requested that he be separated from inmate Turning Bear. SMF ¶ 15. Moreover, it is undisputed that Rivera went into the recreation pen with Turning Bear on June 4, 2010, without objection, and that they were together throughout the recreation

period of time without incident. It was not until the very end of the time allotted for recreation that Turning Bear attacked Rivera. Id. ¶¶ 33-34.

"While prison officials have a statutory duty to provide for the "safekeeping" of inmates, [§ 4042] leaves the implementation of these duties to the discretion of prison officials, and 'how best to protect one inmate from the threat of attack by another is of the kind that the discretionary function exception was designed to shield.'" Rinaldi v. United States, No. 1:CV-09-1700, 2010 WL 4642498, * 4 (M.D. Pa., Nov. 9, 2010)(Rambo, J.) (copy attached) (quoting Donaldson v. United States, 281 F. App'x. 75, 77 (3d Cir. 2008)), aff'd, 460 F. App'x 80, 81 (3d Cir. Jan. 26, 2012) (copy attached).

In Donaldson and Rinaldi, the Third Circuit held that no federal statute, regulation, or policy required the BOP to take a particular course of action to ensure the plaintiff's safety from attacks by other inmates. The Court further concluded that the BOP's decisions on how to protect inmates from other inmates were the kind of judgments that the discretionary function exception was designed to protect. Donaldson, 281 F. App'x at 78; Rinaldi, 460 F. App'x at 81. Thus, assuming arguendo that Rivera did tell staff he felt unsafe if he was assigned to a recreation pen with Turning Bear, the decision by the staff of how to respond to the situation was in the realm of a discretionary decision of how to best protect Rivera. Even if

ultimately their decision was wrong it was still discretionary and is therefore covered by the discretionary function exception. Alfey v. United States, 276 F.3d 557, 564 (9th Cir. 2002) ; Calderon v. United States, 123 F.3d 947 (7th Cir. 1997)

Federal courts, including ours, have consistently held that FTCA claims for injuries caused by other inmates are barred by the discretionary function exception. Donaldson, 281 F. App'x. 75; Rinaldi, 460 F. App'x 80; Castillo v. United States, 166 F. App'x. 587, 589 (3d Cir. 2006); Pratt v. United States, 2012 WL 4103912, at *2 (M.D. Pa. Sept. 12, 2012) (Caldwell, J.) (copy attached); Thrower v. United States, 2012 WL 3679702, *10 (M.D. Pa. Aug. 24, 2010) (Conner, J.) (copy attached); Michtavi v. United States, 2009 WL 578535, at *10 (M.D. Pa. Mar. 4, 2009)(Jones, J.)(copy attached); Alfrey v. United States, 276 F.3d 557, 564 (9th Cir. 2002)(decision by BOP officials not to respond to or report inmate threats protected by discretionary function exception); Dykstra v. Bureau of Prisons, 140 F.3d 791, 796 (8th Cir. 1998)(the failure to protect an inmate from a sexual assault by another inmate is protected by the discretionary function exception); Calderon v. United States, 123 F.3d 947, 949 (7th Cir. 1997)(discretionary function exception applied when inmate informed officers about another inmate's threats).

Likewise, courts have also determined that the BOP's actions in transferring, classifying, and placing prisoners in particular institutions, units and cells, falls

within the discretionary function exception. Cohen v. United States, 151 F.3d 1338, 1345 (11th Cir. 1998). See also Enlow v. United States, 161 F. App'x. 837, 840-41 (11th Cir. 2006) (the transfer and placement of prisoners normally falls under the discretionary functions of the FTCA); Santana-Rosa v. United States, 335 F.3d 39, 43 (1st Cir. 2003) (decisions with regard to assignment of prisoners to particular units or placement in cells must be viewed as falling within the discretionary function exception); Ballester v. United States, 2006 WL 3544813 (N.D. Ga. 2006) (copy attached) (same). In Scrima v. Hasty, 1998 WL 661478, *4 (S.D.N.Y 1998) (copy attached), the court determined that even decisions with regard to where an inmate was to exercise was a discretionary function of the BOP.

Therefore, Rivera's claim that he was attacked by inmate Turning Bear as a result of prison officials' various acts of negligence, including the way in which they responded to the emergency--Buchanan v. United States, 915 F.2d 969, 971 (5th Cir. 1990); Addison v. United States, 2012 WL 2863434, *4 (S.D. Ga. Apr. 16, 2012) (copy attached)-- are barred by the discretionary function exception.

### C.     Rivera's claim that prison officials failed to check for weapons fails to state a prima facie claim of negligence.

Rivera avers that prison officials had a duty to search inmate Turning Bear to ensure he was not hiding a weapon prior to being placed in the recreation cage. Compl. (Doc. 1) ¶¶ 31-32.

The FTCA governs all claims against the United States "for money damages for injury or loss of personal property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2675(a). Further, under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for . . . punitive damages." Id. at § 2674. The FTCA "provides a mechanism for bringing a state law tort action against the federal government in federal court" and the "'extent of the United States' liability under the FTCA is generally determined by reference to state law.'" In re Orthopedic Bone Screw Product Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001) (quoting Molzof v. United States, 502 U.S. 301, 305 (1992)).

It is well-settled that a federal district court, in considering an FTCA action, must apply the law of the state in which the alleged tortious conduct occurred,

14

which in this case is Pennsylvania.   See 28 U.S.C. § 1346(b)(1991); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987).   In order to establish a cause of action for negligence in Pennsylvania, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages.   Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. Ct. 1994). Here, there was no negligent breach of a duty; and thus, no showing that the negligent breach was the proximate cause of any injury to the plaintiff.

As set forth above, the BOP provides annual training to its staff members on the subject of, inter alia, how to search and escort inmates who are removed from the cells.   See text, supra, at pp. 3-4; SMF ¶¶ 16, 21, 22.   Additionally, the BOP has issued post orders for Z-Block staff members addressing this issue.   SMF ¶¶ 31, 33.   As specifically set forth therein, once an inmate is placed in hand restraints and allowed out of his cell, each inmate is then visually observed, pat searched, and scanned with a hand held metal detector over his entire body, both front and back.   SMF ¶¶ 21, 22, 33.   The inmate is then escorted to the recreation area and the restraints are not removed until after the inmate is placed into the recreation pen.   Id. ¶¶ 45-46.

Since no particular officer was assigned to escort any specific group of inmates on June 4, 2010, it is not clear which officer may have escorted and searched inmate Turning Bear on that day. Id. ¶¶ 37, 39. However, at least one of the officers on duty that day can attest to the fact that these procedures were followed by staff in accordance with their annual training and the procedures set forth in the Z Block's Special Post Orders. Id. ¶¶ 35-46.

Accordingly, Rivera has failed to establish the United States breached its duty to him or such alleged breach was the proximate cause of any injury. Therefore, Rivera has failed to state a claim of negligence and the United States of America is entitled to judgment as a matter of law.

## VI. Conclusion

Based upon the above, the United States respectfully requests that the Court grant its Motion for Summary Judgment.

                                           Respectfully submitted,

                                           PETER J. SMITH
                                           United States Attorney

                                           s/ Justin Blewitt
                                           JUSTIN BLEWITT
                                           Assistant U.S. Attorney
                                           PA 01710
                                           MICHELE E. LINCALIS
                                           Supv. Paralegal Specialist
                                           P.O. Box 309
                                           Scranton, PA 18501-0309
                                           Phone:   (570) 348-2800
                                           Facsimile: (570) 348-2830
Date:   December 5, 2012          Justin.Blewitt@udoj.gov

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASPER RIVERA,** | : | No. 3:CV-12-1339 |
| Plaintiff | : | |
| | : | |
| | : | (Kosik, J.) |
| **v.** | : | (Carlson, M.J.) |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| Defendant | : | Filed Electronically |

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on December 5, 2012, she served a copy of the attached

## BRIEF IN SUPPORT OF THE UNITED STATES' MOTION SUMMARY JUDGMENT

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Jasper Rivera
Reg. No. 10581-078
U.S. Penitentiary
P.O. Box 2068
Big Sandy, KY   41224

s/ Michele E. Lincalis
Michele E. Lincalis
Supv. Paralegal Specialist