IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JASPER RIVERA,                          :
                                        :
            Plaintiff,                  :        Case No.  3: CV-12-1339
                                        :
      v.                                :        (Kosik, J.)
                                        :        (Carlson, M.J.)
UNITED STATES OF AMERICA,    :
                                        :
            Defendant.                  :

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Jasper Rivera, through counsel and pursuant to Local Rule 7.6,

hereby opposes Defendant's Motion for Summary Judgment.   Plaintiff has

simultaneously filed a separate Counter Statement of Material Facts and Response

to Defendant's Statement of Material Facts, pursuant to Local Rule 56.1.

## SUMMARY OF ARGUMENT

Defendant proposes only two reasons to grant its Motion for Summary

Judgment.  It argues that:  (1) the discretionary function exception of the Federal

Tort Claims Act (FTCA) shields the government from suit when its employees fail

to stop one prisoner from harming another, and (2) Mr. Rivera has not stated the

elements of a tort claim under Pennsylvania law.  Brief at 7.  Both arguments

collapse when confronted with recent Third Circuit precedent and the undisputed

facts of this case.  Defendant's own exhibits show that, in light of established

policies of the Bureau of Prisons (BOP), its employees had no discretion about

reporting prisoner separation needs or screening prisoners for metal objects on the

way to the recreation cages.  If a seven-inch metal knife was available to stab Mr.

Rivera in a recreation cage, it can only have been because employees violated

mandatory procedure.  Causation is demonstrated through the theory of *res ipsa*

*loquitur*, recognized by Pennsylvania case law that is applicable here.  The tort of

negligence is proved in Pennsylvania when causation is established together with

duty, breach, and injury – none of which Defendant can deny, given the

circumstances of Mr. Rivera's stabbing.  Mr. Rivera has stated a claim for

negligence, and the FTCA's discretionary function exception does not bar it.

## ARGUMENT

I.  WHEN ACTIONS ARE EXPLICITLY COMMANDED BY A
    GOVERNMENT POLICY, THE  FTCA'S  DISCRETIONARY FUNCTION
    EXCEPTION DOES NOT APPLY.

The Federal Tort Claims Act bars suit against the United States for actions

undertaken by its employees while carrying out their functions and duties in

circumstances where they have leeway to use discretion.  28 U.S.C. § 2680(a).

The two-part inquiry for identifying such circumstances is set forth in Berkovitz v.

United States, 486 U.S. 531, 536-37 (1988), and Defendant correctly recites it.

Brief at 9.  The discretionary function exception applies only when "the challenged conduct involves an element of judgment" and "that judgment is of the kind that the discretionary function exception was designed to shield."  Berkovitz at 536. Conversely, "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."  Id.  Immunity from suit is waived as long as a federal agency has adopted specific, mandatory procedures for its employees to follow and they fail to do so.

The Third Circuit recently applied the Berkovitz test to bar the suit of a child injured at a national park's shore where warning signs were less than explicit about the danger of barracuda bites.  S.R.P. v. United States, 676 F.3d 329 (3d Cir. April 10, 2012).  The court determined that the discretionary function exception applied there because a National Park Service directive was worded broadly enough to allow employees to use their judgment in devising warnings for swimmers.  Id. at 334-35.  However, the court also cautioned against letting the exception "swallow the FTCA's general waiver of sovereign immunity and frustrate the purpose of the statute."  Id. at 338.  Moreover, the Third Circuit ruled that the government had the burden of proving that the exception applied.  Id. at 333.

In the case at bar, the government seeks to meet its burden by pointing to only the broadest of all BOP mandates, the statutory duty to provide for the safekeeping of prisoners.  Brief at 10, citing 18 U.S.C. § 4042.  But the government overlooks the fact that, pursuant to § 4042(a)(2) and (3), the BOP has gone on to promulgate hundreds of mandatory policies, program statements, and operations manuals that lay down specific procedures for staff to follow in virtually every situation that might conceivably develop in a federal prison.

The Third Circuit held that prison employees have no discretion when detailed instructions are provided in documents like BOP program statements, institutional supplements, and inmate handbooks.  Gray v. United States, No. 11-3918, 2012 U.S. App. LEXIS 12988, at *6-8 (3d Cir. June 26, 2012) (not precedential) (copy attached).  In Gray, the court applied its precedential S.R.P. analysis of the FTCA's discretionary function exception to the case of a prisoner injured at USP Lewisburg in circumstances remarkably similar to those of Mr. Rivera's stabbing.  The plaintiff in Gray was slashed repeatedly by his cellmate with a razor.  The attacker had the razor only because prison staff failed to take it from him after he showered and shaved, in violation of explicit instructions in prison policy documents.  Id. at *8.  The district court had granted summary judgment in favor of the government, but the Third Circuit vacated the judgment,

4

in part, because "the task of collecting razors does not involve an element of judgment or choice and the discretionary function exception is inapplicable."[1] Id. Procedures laid out in official documents left prison staff no leeway to decide whether or not to retrieve razors from the inmates when their showers were done.

The same holds true here.  Explicit procedures cover all four aspects of Mr. Rivera's negligence claim.  First, prison employees must use metal detectors to eliminate metal weapons.  Second, prison employees must respond immediately to an emergency.  Third, prison employees must maintain absolute physical separation between inmates who harbor gang animosity toward each other.  Fourth, prison employees must inform superiors when they learn of the emergence of gang animosity between two inmates.

### A.  Metal detectors must be used to find and eliminate weapons whenever prisoners leave their cells.

Federal regulations require prison staff to deter prisoners from possessing contraband, including weapons:

---

1.  The court affirmed the judgment as to another aspect of the negligence claim, in which the plaintiff blamed the prison for not separating him from his cellmate after being informed that hostility existed between them and violence was likely.  However, the court explained that it affirmed just because the plaintiff did not present that issue on appeal.  Grey, 2012 U.S. App. LEXIS 12988, at *3 n.1.

In order to further the safe, secure, and orderly running of its institutions, the Bureau of Prisons conducts searches of inmates and of inmate housing and work areas to locate contraband and to deter its introduction and movement.  Staff *shall* employ the least intrusive method of search practicable, *as indicated by the type of contraband* and the method of suspected introduction.

28 C.F.R. § 552.10 (emphasis added).   Weapons are contraband.  BOP Program Statement 3420.09, "Standards of Employee Conduct," at § 12 (interpreting C.F.R. § 500.1(h)).  Exhibit 1.  These regulations allow limited discretion, which the BOP exercised when it determined that electronic metal detectors must be used to deter possession of metal weapons by federal prisoners.  Once that determination was made, staff no longer had any leeway to exercise their own judgment about what method of search to use.  Every time an inmate leaves his cell to go to a recreation cage, he must undergo screening with a metal detector.  Explicit instructions to this effect appear in the Special Post Orders for Z Block at USP Lewisburg:  "All inmates who are removed from the cell will be pat searched and a hand-held metal detector utilized for screening."  Exhibits in Support of the United States' Motion for Summary Judgment, Attachment F to Exhibit 1 (Special Post Orders for Z Block) at 80; Exhibit 1 (Declaration of Michael S. Romano) at 2 .[2]  See ECF No.

---

2.  For clarity, ECF document and page numbers will be used hereinafter to cite Defendant's exhibits in the Record ("Def. Ex., ECF No. ___ at ___").  The numbering provided in the exhibits is confusing, and some of it is printed in Greek.

27-2 at 17; ECF No. 27-1 at 4 ¶ 8.  Corrections officers at USP Lewisburg receive

training to inform them that they are required to apply the metal detector when

taking prisoners out of their cells.  Def. Ex., ECF No. 27-1 at 5 ¶ 10, ECF No. 27-2

at 23.  In fact, the Z Block Post Orders forbid staff to allow inmates to carry

anything at all with them when they go to the recreation cages.  Def. Ex., ECF No.

27-2 at 18.  Electronic screening with a metal detector is mandatory whenever

prison staff conduct an inmate to recreation; it is simply not a discretionary

function.

### B.  Immediate response to an emergency is mandatory.

Prison employees are required to take immediate action when an emergency

arises.  "Because failure to respond to an emergency may jeopardize the security of

the institution, as well as the lives of staff or inmates, *it is mandatory* that

employees respond *immediately and effectively* to all emergency situations."  BOP

Program Statement 3420.09 § 10(b) (emphasis added).  Exhibit 2.  A prison guard

has no discretion to watch a situation develop before he uses his pepper ball gun to

stop a potentially lethal attack on an inmate.

### C. Policy requires absolute separation of gang enemies.

The BOP instituted the Central Inmate Monitoring (CIM) System to enable

it to provide appropriate custody for inmates perceived to have special

7

management needs.  28 C.F.R. § 524.70.  Such inmates include gang members and

individuals who must be kept separate from certain other individuals.  The

regulations describe some of them as follows:

> Inmates who belong to or are closely affiliated with groups (e.g.,
> prison gangs), which have a history of disrupting operations and
> security in either state or federal penal (which includes correctional
> and detention facilities) institutions.  This assignment also includes
> those persons who may require separation from a specific disruptive
> group. . . .

> Inmates who may not be confined in the same institution (*unless the
> institution has the ability to prevent any physical contact between the
> separatees*) with other specified individuals who are presently housed
> in federal custody or who may come into federal custody in the future.

28 C.F.R. § 524.72(d) and (f) (emphasis added).  This language indicates that

separation is mandatory for inmates known to be gang enemies; it is not

discretionary.  Ordinarily, "separatees" cannot even be housed in the same

institution.  But institutions like USP Lewisburg are required to have procedures in

place that make it possible to house gang enemies together in a Special

Management Unit (SMU) while keeping them physically separate, provided that

the procedures are followed.  The SMU is designed for prisoners who

"[p]articipated in disruptive geographical group/gang-related activity" or "[h]ad a

leadership role in disruptive geographical group/gang-related activity," among

others.  BOP Program Statement 5217.01 § 2.  Exhibit 3.  The BOP has no

8

discretion to place "separatees" together.  It can house them at USP Lewisburg

only because of the draconian conditions of confinement in the Lewisburg SMU:

confinement in a cell with one other individual for 23 or 24 hours a day and careful

monitoring of other contact.  BOP Program Statement 5217.01 § 5.  Exhibit 4.

"Inmates with CIM assignments related to their SMU placement may be housed in

the same institution/SMU housing unit . . . due to the institution's ability to prevent

any physical contact between them."  Id. at § 4(a).  Keeping designated

"separatees" apart is not a matter of discretion.  It is required.

### D.  Notification of gang animosity is not a discretionary matter.

While the CIM system is centralized, responsibility for implementing it is

shared across every level of BOP staff.  Each prison has a Case Management

Coordinator (CMC) who "shall provide oversight and coordination of CIM

activities at the institutional level."  28 C.F.R. § 524.71.  At USP Lewisburg,

"appropriate staff" may impose a CIM classification on an inmate "at any time."

Def. Ex., ECF No. 27-2 at 35 ¶ 2 (Declaration of Matt Rodarmel).  But prison

employees are required to report the need for such reclassification to the CMC.

"When staff believe that removal or modification of a CIM assignment is

appropriate the institution's case management coordinator (CMC) and appropriate

reviewing authority *must be notified*."  Id. (emphasis added).  Mandatory

notification of the prison's CMC is the mechanism for keeping CIM classifications current with shifting relationships among members of the various prison gangs. Intelligence about gang animosity travels up the lines of authority from prisoners to COs to their superiors through recognized procedures like that described by the witness to Mr. Rivera's stabbing.  See Exhibit A with Plaintiff's Counter Statement of Facts (Declaration of Todd A. Dunham); see also Plaintiff's Counter Statement of Facts ¶¶ 18-26.

Thus, the actions of federal prison employees that caused harm to Mr. Rivera were in no way discretionary.  In this, they differed from the conduct contested in the cases cited by the government in support of its Motion for Summary Judgment.  The government relies principally on a non-precedential Third Circuit opinion handed down before the Third Circuit articulated its current analysis of the FTCA's discretionary function exception in S.R.P. v. United States, discussed above.  Brief at 11.  See Rinaldi v. United States, No. 1:CV-09-1700, 2010 U.S. Dist. LEXIS 118905 (M.D. Pa. 2010) (copy attached), aff'd, 460 F. App'x 80 (3d Cir. 2012) (copy attached).  In a per curiam opinion, the Rinaldi panel summarily affirmed the dismissal of a complaint under the FTCA where the prisoner plaintiff cited no regulation beyond the "statutory duty to provide for the 'safekeeping' of inmates, 18 U.S.C. § 4042."  2010 U.S. Dist. LEXIS 118905, at

10

*12; see also 460 F. App'x at 81.  The court found leeway for judgment in that statute, as the government correctly notes.  Brief at 11.

Here, however, the BOP exercised its judgment and implemented the many policies and procedures that, especially in the SMU, now remove virtually all vestiges of discretion with regard to separating hostile prisoners and screening out metal objects.  Unlike the plaintiff in Rinaldi, Mr. Rivera indicates the particular BOP policies and regulations that did away with discretion.  Moreover, the Third Circuit itself subsequently made clear in S.R.P. that the government cannot meet its burden for claiming the discretionary function exception where there is "a federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow."  S.R.P., 676 F.3d at 333 (internal quotation omitted); see also Gray, 2012 U.S. App. LEXIS 12988, at *4 ("We recently set forth in S.R.P. the test for determining whether the discretionary function exception immunizes the government from suit.").

Moreover, Defendant cannot cite a single binding authority requiring this court to bar an inmate's claim simply because the injury was inflicted by another inmate.  See Brief at 12 (citing about a dozen cases that are either unreported or from other circuits).  Even if taken as merely persuasive authorities, the cited cases are distinguishable:  Only one of those defendants identified any specific

11

mandatory regulation that eliminated discretion, as Mr. Rivera has done here; and in that case, the Ninth Circuit *remanded* for that reason.  See <u>Alfrey v. United States</u>, 276 F.3d 557, 559 (remanding because of  "[p]laintiff's claim that the Government negligently failed to discharge a nondiscretionary duty to perform a 'Central Inmate Monitoring' (CIM) evaluation . . . as to which there are genuine issues of material fact").  In its brief, Defendant truncates the holding of the <u>Alfrey</u> panel to camouflage how the remand favored the plaintiff.  Brief at 12.

## II.  THE UNDISPUTED FACTS ESTABLISH THE ELEMENTS OF THE TORT OF NEGLIGENCE UNDER PENNSYLVANIA LAW.

The Third Circuit reiterated its familiar pleading standard recently when it reviewed a complex summary judgment in a federal prisoner's suit for injuries inflicted by fellow inmates in a recreation pen.  <u>Bistrian v. Levi</u>, 696 F.3d 352, 365 (3d Cir. September 24, 2012).  That case is currently before the U.S. District Court for the Eastern District of Pennsylvania on remand.  <u>See</u> No. 2-08-cv-03010.  The plaintiff in <u>Bistrian</u> is proceeding under both the FTCA, like Mr. Rivera, and the <u>Bivens</u> doctrine.  696 F.3d at 363.  The same standard applies to all claims.

The court must conduct a three-step analysis to decide whether a claim is to survive a motion for summary judgment.  First, the count "outline[s] the elements a plaintiff must plead to a state a claim for relief."  <u>Id.</u> at 365.  Next, it

disregards conclusory allegations, and finally, it checks to see whether the claim for relief is "plausible" if all the well pled facts are credited. Id., citing Ashcroft v. Iqbal, 556 U.S. 662, 670-75 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Fowler v. UPMC Shadyside, 578 F.3d 203, 209-211 (3d Cir. 2009). "The touchstone of the pleading standard is plausibility." Bistrian, 696 F.3d at 365.[3]

Mr. Rivera alleges negligence by employees of the United States, and the elements of that tort are well established in Pennsylvania law. "In order to establish a cause of action for negligence, a plaintiff must prove the following four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury, and (4) actual damages." Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. Ct. 1994). The Complaint alleges duty. Compl. ¶¶ 31-32, 44, 49. The particulars of this duty are specified in the federal regulations and BOP program statements discussed above. The Complaint also alleges breach of duty. Compl. ¶¶ 28, 49. Moreover, Plaintiff suffered actual injuries. Compl. ¶¶ 35, 38, 40-42. Plaintiff also alleges

---

3. Mr. Rivera's vulnerability as a gang dropout is analogous to that of the Bistrian plaintiff as an informant. The Third Circuit remarked, "Given prisoners' attitudes about 'snitches,' it is reasonable to infer that placing Bistrian in a locked recreation pen with any violent inmates, not only those he specifically cooperated against, created a substantial risk of serious harm." Bistrian, 696 F.3d at 371.

that these injuries were caused by the conduct of federal employees.  Compl. ¶¶ 47,

49.  Thus, all four elements of the tort have been pled by Mr. Rivera.

Defendant does not deny duty or injury.  It denies only that a negligent

breach of duty caused the injury.  Brief at 15.  But negligence is the plausible cause

of injury under Pennsylvania law when circumstances establish that the injury most

likely can have occurred in no other way except through negligence.  Pennsylvania

courts accept the theory of *res ipsa loquitur*.  Quinby v. Plumstead Family

Practice, Inc., 907 A.2d 1061, 1069 n.13 (Pa. 2006).  Accordingly, "a plaintiff may

satisfy his burden of producing evidence of a defendant's negligence by proving

that he has been injured by a casualty of a sort that normally would not have

occurred in the absence of the defendant's negligence."  Id. at 1071.  This is exactly

what Mr. Rivera has done.  The only way for the metal weapon to get into the

recreation cage was for prison staff to neglect to follow mandatory procedures with

regard to use of metal detectors.[4]  The only way for Mr. Rivera to be rendered

─────────────────────

4.  The government grossly misrepresents a staff member's declaration when
it states that "one of the officers on duty that day can attest to the fact that *these
procedures were followed* by staff."  Brief at 16 (emphasis added), misquoting the
declaration of Jeffrey Vargeson.  See Def. Ex., ECF No. 27-2 at 49.  On the
contrary, Mr. Vargeson describes what "would" have been done *if* procedures had
been followed.  He does not attest that procedures actually were followed on the
day when Mr. Rivera was stabbed.  In fact, Mr. Vargeson states that his
recollection of that day is incomplete.  Id. at 48-49.

vulnerable to a gang enemy was for prison staff to neglect to follow mandatory

procedures with regard to notifying superiors of a separation need.  The only way

for him to be stabbed fifteen times while COs stood by watching was for prison

staff to neglect to follow mandatory procedures with regard to immediate response

to emergencies.  These are not conclusory allegations; they are entirely plausible

inferences supported by Pennsylvania case law.

## CONCLUSION

Defendant's Motion for Summary Judgment should be denied.  Mr. Rivera

has plausibly pleaded the elements of negligence, and the discretionary function

exception of the FTCA does not apply.

Respectfully submitted,

/s/ Marianne Sawicki

_____

MARIANNE SAWICKI
PA  313471
2530 Blair Avenue
Huntingdon, PA 16652
Phone:       (814) 644-6884
FAX:          (570) 523-3944
MarianneSawicki@verizon.net

Attorney for Jasper Rivera

Date:  February 8, 2013

15

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JASPER RIVERA,                          :
                                        :
            Plaintiff,                  :        Case No.  3: CV-12-1339
                                        :
      v.                                :        (Kosik, J.)
                                        :        (Carlson, M.J.)
UNITED STATES OF AMERICA,               :
                                        :
            Defendant.                  :

## CERTIFICATE OF SERVICE

      I hereby certify that on this 8th day of February, 2013, a true and correct

copy of the foregoing Plaintiff's Brief in Opposition to Defendant's Motion for

Summary Judgment was electronically filed and served on the party below through

the Electronic Case Filing system of the court.

Justin Blewitt
U.S. Attorney's Office
235 N. Washington Avenue
Scranton, PA 18503
*Counsel for Defendant*

                                        /s/ Marianne Sawicki
                                        _____
                                        MARIANNE SAWICKI
                                        PA 313471
                                        2530 Blair Avenue
                                        Huntingdon, PA 16652
                                        Phone:      (814) 644-6884
                                        FAX:         (570) 523-3944
                                        MarianneSawicki@verizon.net