PJS:JJB:mel

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASPER RIVERA,** | : | **No. 3:CV-12-1339** |
| **Plaintiff** | : | |
| | : | |
| | : | **(Kosik, J.)** |
| **V.** | : | **(Carlson, M.J.)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Defendant** | : | **Filed Electronically** |

## SUPPLEMENTAL EXHIBITS IN SUPPORT OF
## THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

PETER J. SMITH
United States Attorney

s/ Justin Blewitt
JUSTIN BLEWITT
Assistant U.S. Attorney
PA 01710
MICHELE E. LINCALIS
Supv. Paralegal Specialist
P.O. Box 309
Scranton, PA 18501-0309
Phone:   (570) 348-2800
Facsimile: (570) 348-2830
Justin.Blewitt@udoj.gov

Date:   March 8, 2013

## INDEX

Declaration of James Fosnot ...................................................................Ex. 9

Declaration of Brent Taggart.................................................................Ex. 10

Declaration of J. Lesho.........................................................................Ex. 11

Declaration of R. Harvey......................................................................Ex. 12



GOVERNMENT
EXHIBIT
9

CARDELS 800-783-0399

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASPER RIVERA,                          )
                                        )
                Plaintiff               )        CIVIL ACTION NO. 3:CV-12-1339
                                        )
        vs.                             )
                                        )
UNITED STATES OF AMERICA                )
                                        )
                Defendant               )

**DECLARATION OF JAMES FOSNOT**

1.      I am currently employed by the Federal Bureau of Prisons (hereafter "BOP") as an Special Investigative Agent("SIA"), and am assigned to the United States Penitentiary, Lewisburg, PA (hereafter "USP Lewisburg").  I As a part of my duties and responsibilities, I have access to inmates' records, electronic data maintained on the BOP's SENTRY computer system, and BOP Program Statements.  I certify that the Attachments referenced herein are true and accurate to the best of my knowledge.

2.      My job duties include serving as the designated intelligence officer for the facility, and as such, collects, analyzes, and disseminates strategic intelligence as it relates to inmates or groups of inmates whose unique skills or illicit activities pose a significant threat to the security of the institution, the safety of staff and inmates, and the welfare of the surrounding community. My duties include collecting and analyzing operational intelligence (also known as tactical intelligence) regarding the current illicit activities of these groups and refers criminal investigations as appropriate.

3.      The BOP monitors and controls the transfer, temporary release and community activities of certain inmates who present special needs for management.   Such inmates are known as Central Inmate Monitoring Cases (CIM) and require a higher level of review for transfers, temporary releases or community activities.  This monitoring is done to provide protection to all concerned and to contribute to the safe and orderly operation of the federal institutions.

4.      CIM categories include "Separation" which includes inmates who may not be confined in the same institution (unless the institution has the ability to prevent any physical contact between the separatees).  Factors to be considered in categorizing an inmate as a Separation include, but are not limited to:  testimony by or about an individual provided in court, whether the inmate has exhibited aggressive or intimidating behavior towards other specific individuals in the community or institution.  This assignment also includes inmates who have cooperated with the authorities in providing information about illegal activities of other individuals.

5.      Another CIM category includes Disruptive Groups.  Disruptive Group inmates are inmates belong to or are closely affiliated with groups (e.g. prison gangs), which have a history of disrupting operations and security of correctional institutions.

**See P.S. 5180.05, Central Inmate Monitoring System (CIMS);**

**28 CFR 524.72 CIM Assignment Categories**

6.      The BOP recognizes five different Disruptive Groups:  Black Guerilla Family; Aryan Brotherhood; Mexikanemi ; Mexican Mafia; and Texas Syndicate.

7.      An inmate may be classified as a CIM inmate at any time by a community corrections manager or by appropriate staff in the central office, regional office or institution.  Periodic reviews of CIM assignments occur at program review.  When staff believes that removal or modification of a CIM assignment is appropriate the institution's case management coordinator

(CMC) and appropriate reviewing authority must be notified.  An inmate may appeal the

placement in a CIM category by utilizing the administrative remedy process.

**See PS 5180.05, Central Inmate Monitoring System**

8.      The BOP also monitors inmates that are considered Security threat groups.  Security

threat groups can be gangs such as but not limited to: Latin Kings, Paisa, Dirty White Boys,

Aryan Circle, Crips, Bloods, Black Gangster Disciples, Vice Lords.  Security threat groups also

include (but not limited to): inmates who are former law enforcement, sex offenders, threats to

government officials, history of assault on officers and many other categories.

9.      The only groups that the BOP keeps completely apart from each other are:

Mexican Mafia/Surenos from Texas Syndicate

And

Bario Azteca from the Border Brothers

10.   Records indicate Rivera was a Tango Associate at the time of the altercation.

11.   Records indicate Turning Bear was not affiliated with a gang at the time of the

altercation.

12.   There was no reason that Rivera and Turning Bear could not participate in recreation

together.

I declare under penalty of perjury pursuant to 28, United States Code, Section 1746, that

the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this ___27TH___ day of February, 2013.

_____

James Fosnot
Special Investigative Agent
USP Lewisburg

3

P5180.05 CENTRAL INMATE MONITORING SYSTEM (PS ONLY)

Starting in May of 2006, the Office of National Policy Management began reformatting policies that contain change notices.  With the rapid growth in word processing and electronic distribution via Sallyport and the internet, many of these WordPerfect 5.0 documents have become unstable.

No word or substance changes have or will be made to any of these documents.  To avoid confusion these documents will be re-issued electronically with a new number and new date.

Thank you for your patience during this conversion process and please give me a call if you have any questions or concerns.


Robin Gladden
Directives Manager
(202) 616-9150



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program
# Statement

OPI: CPD
NUMBER: 5180.05
DATE: 12/31/2007
SUBJECT: Central Inmate Monitoring
System

This is an electronic re-issuance for
technical reasons only. There are no
substance or word changes to the document.

1. [PURPOSE AND SCOPE §524.70. The Bureau of Prisons monitors
and controls the transfer, temporary release (e.g., on writ), and
community activities of certain inmates who present special needs
for management. Such inmates, known as central inmate monitoring
(CIM) cases, require a higher level of review which may include
Central Office and/or Regional Office clearance for transfers,
temporary releases, or community activities. This monitoring is
not to preclude a CIM case from such activities, when the inmate
is otherwise eligible, but rather is to provide protection to all
concerned and to contribute to the safe and orderly operation of
federal institutions.]

Detailed instructions and guidelines for implementation of the
Central Inmate Monitoring System are contained in the CIM
Operations Manual. The CIM manual is designated as "Limited
Official Use Only" and shall be maintained in accordance with the
Program Statement on Directives Management.

2. PROGRAM OBJECTIVES. The expected results of this program
are:

a. Inmates who meet specified criteria will be given Central
Inmate Monitoring assignments so that critical decisions about
their cases are carefully reviewed.

b. Inmates who have been sentenced and have been classified as
Central Inmate Monitoring cases will be notified of that fact,
and the basis for it, in writing.

c. The status, identity, and location of Witness Security
cases will not be improperly disclosed.

d. The institution environment will be made safer by case
management decisions based on accurate information and sound
correctional judgment.

e. The public will be protected from undue risk.

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

3.  <u>DIRECTIVES AFFECTED</u>

   a.  <u>Directives Rescinded</u>

| PS 1436.08 | Secret Service Liaison and Surveillance (12/02/88) |
| PS 5180.03 | Central Inmate Monitoring System (09/14/90) |

   b.  <u>Directives Referenced</u>

| PS 1221.64 | Directives Management Manual (08/20/96) |
| PS 1315.05 | Legal Activities, Inmate (06/13/94) |
| PS 1330.13 | Administrative Remedy System for Inmates (12/22/95) |
| PS 1480.03 | News Media Contacts (10/07/94) |
| PS 5100.06 | Security Designation and Custody Classification Manual (06/07/96) |
| PS 5264.06 | Telephone Regulations for Inmates (12/22/95) |
| PS 5265.09 | Correspondence (01/04/96) |
| PS 5267.05 | Visiting Regulations (07/21/93) |
| PS 5270.07 | Inmate Discipline and Special Housing Units (12/29/87) |
| PS 5280.07 | Furloughs (06/23/95) |
| PS 5290.07 | Intake Screening (07/20/92) |
| PS 5290.08 | Admission and Orientation Program (04/20/93) |
| PS 5321.06 | Unit Management Manual (07/31/96) |
| PS 5322.09 | Classification and Program Review of Inmates (03/10/94) |
| PS 5360.06 | Religious Beliefs and Practices of Committed Offenders (08/29/95) |
| PS 5500.07 | Correctional Services Manual (01/31/95) |
| PS 5538.03 | Escorted Trips (06/23/95) |
| PS 5800.07 | Inmate Systems Management Manual (12/24/91) |
| PS 5800.09 | Inmate Central File, Privacy Folder, and Parole Mini-Files (07/21/93) |
| PS 5803.05 | Progress Reports (02/11/94) |
| PS 7331.03 | Pretrial Inmates (11/22/94) |
| TRM  005.01 | SENTRY General Use Technical Reference Manual (06/01/94) |

   18 U.S.C. 1961-1968
   21 U.S.C. 848

   c.  Rules cited in this Program Statement are contained in 28 CFR 524.70-76.

4.  <u>STANDARDS REFERENCED</u>.  None.

5.  <u>PRETRIAL/HOLDOVER PROCEDURES</u>.  Procedures required in this Program Statement are applicable to pretrial and holdover inmates.

6. [<u>RESPONSIBILITY</u> §524.71. Authority for actions relative to the CIM system is delegated to the Assistant Director, Correctional Programs Division, to Regional Directors, and to Wardens.  The Assistant Director, Correctional Programs Division, and Regional Directors shall assign a person responsible for coordinating CIM activities.  The Case Management Coordinator (CMC) shall provide oversight and coordination of CIM activities at the institutional level, and the Community Corrections Manager shall assume these responsibilities for contract facilities.]

The Central Inmate Monitoring (CIM) Operations Manual identifies key staff who are to complete CIM certification procedures.

7.  [<u>CIM ASSIGNMENT CATEGORIES</u> §524.72.  CIM cases  are classified according to the following assignments:

  a.  <u>Witness Security Cases</u>.  Individuals who agree to cooperate with law enforcement, judicial, or correctional authorities, frequently place their lives or safety in jeopardy by being a witness or intended witness against persons or groups involved in illegal activities.  Accordingly, procedures have been developed to help ensure the safety of these individuals.  There are two types of Witness Security cases:  Department of Justice (authorized by the Attorney General under Title V of Public Law 91-452, 84 Stat. 933); and Bureau of Prisons Witness Security cases (authorized by the Assistant Director, Correctional Programs Division).]

  The vast majority of witness security (WITSEC) cases are those authorized by the Attorney General.  Both types of WITSECs are treated similarly while in Bureau custody.

  [b.  <u>Threats to Government Officials</u>.  Inmates who have made threats to government officials or who have been identified, in writing, by the United States Secret Service as requiring special surveillance.

  c.  <u>Broad Publicity</u>.  Inmates who have received widespread publicity as a result of their criminal activity or notoriety as public figures.

  d.  <u>Disruptive Group</u>.  Inmates who belong to or are closely affiliated with groups (e.g., prison gangs), which have a history of disrupting operations and security in either state or federal penal (which includes correctional and detention facilities) institutions.  This assignment also includes those persons who may require separation from a specific disruptive group.

  e.  <u>State Prisoners</u>.  Inmates, other than Witness Security cases, who have been accepted into the Bureau of Prisons for service of their state sentences.  This assignment includes cooperating state witnesses and regular state boarders.

P5180.05
12/31/2007
Page 4

f.  Separation.  Inmates who may not be confined in the same institution (unless the institution has the ability to prevent any physical contact between the separatees) with other specified individuals who are presently housed in federal custody or who may come into federal custody in the future.  Factors to consider in classifying an individual to this assignment include, but are not limited to, testimony provided by or about an individual (in open court, to a grand jury, etc.), and whether the inmate has exhibited aggressive or intimidating behavior towards other specific individuals, either in the community or within the institution.  This assignment also includes those inmates who have provided authorities with information concerning the unauthorized or illegal activities of others.  This assignment may also include inmates from whom there is no identifiable threat, but who are to be separated from others at the request of the Federal Judiciary or U.S. Attorneys.

g.  Special Supervision.  Inmates who require special management attention, but who do not ordinarily warrant assignment in paragraphs (a) through (f) of this section.  For example, this assignment may include an inmate with a background in law enforcement or an inmate who has been involved in a hostage situation.  Others may include those who are members of a terrorist group with a potential for violence.]

8.  [CLASSIFICATION PROCEDURES §524.73

a.  Initial assignment.  Except as provided for in paragraphs (a)(1) through (4) of this section, an inmate (including pretrial inmates) may be classified as a CIM case at any time by a Community Corrections Manager or by appropriate staff at the Central Office, Regional Office, or institution.  This initial classification is effective upon documentation in the inmate's record.

(1)  Witness Security Cases.  Witness Security cases are designated by the Central Office only.  An inmate's participation in the Department of Justice Witness Security Program is voluntary.  A commitment interview and an admission and orientation interview are to be conducted with the Witness Security inmate to ensure that the inmate understands the conditions of confinement within the Bureau of Prisons.  Central Office classification of an individual as a witness security case, under either the Department of Justice or Bureau of Prisons, does not require additional review, and overrides any other CIM assignment.

(2)  State Prisoners.  Appropriate staff in the Central Office or Regional Office designate state prisoners accepted into the Bureau of Prisons from state or territorial jurisdictions.  All state prisoners while solely in service of the state sentence

P5180.05
12/31/2007
Page 5

are automatically included in the CIM system to facilitate designations, transfers, court appearances, and other movements.

(3)  <u>Special Supervision</u>.  Placement in this assignment may be made only upon the authorization of a Regional Director or the Assistant Director, Correctional Programs Division.

(4)  <u>Recommitted Offenders</u>.  An inmate who is recommitted to federal custody, who at the time of release was classified as a CIM case, retains this classification pending a review of the CIM status in accordance with paragraph (c) of this section.

b.  <u>Notification</u>.  The case manager shall ensure that the affected inmate is notified in writing as promptly as possible of the classification and the basis for it.  Witness Security cases will be notified through a commitment interview.  The notice of the basis may be limited in the interest of security or safety.  For example, in separation cases under §524.72, notice will not include the names of those from whom the inmate must be separated.  The inmate shall sign for and receive a copy of the notification form.  If the inmate refuses to sign the notification form, staff witnessing the refusal shall indicate this fact on the notification form and then sign the form.  Notification is not required for pretrial inmates.  Any subsequent modification of a CIM assignment or removal from the CIM system requires separate notification to the inmate.]

28 CFR 524.72 refers to Section 7 of this Program Statement.

For purposes of this Program Statement, "prompt" has been defined as within 30 days of classification.

[c.  <u>Initial Review</u>.  A classification may be made at any level to achieve the immediate effect of requiring prior clearance for an inmate's transfer, temporary release, or participation in community activities.  Except for Central Office or Regional Office classification of an individual as a state prisoner in sole service of the state sentence or for classification of pretrial inmates made by designated staff at the institution, a review by designated staff (ordinarily within 60 days of notification to the inmate) is required to determine whether a sound basis exists for the classification.  Staff making the initial classification shall forward to the reviewing authority complete information regarding the inmate's classification.  An inmate not notified of a change in the classification by the reviewing authority within 60 days from the date of the initial notification may consider the CIM classification final.  Reviewing authorities for CIM classification are:

(1)  <u>Central Office Inmate Monitoring Section</u> - reviews classification decisions for all future separation assignments (including recommitments) for Witness Security cases and for any combination of assignments involving Witness Security cases.

(2)  Regional Office - reviews CIM classification decisions for Disruptive Group, Broad Publicity, Threat to Government Officials, Special Supervision, State Prisoners not in sole service of state sentence and initial multiple assignments except Witness Security cases.

(3)  Warden, or Designee - reviews CIM classification decisions for all separation assignments.]

Warden refers to Chief Executive Officer and includes Community Corrections Managers.

[d.  Removal

(1)  Because participation in the Department of Justice Witness Security Program is voluntary, such participants may request removal from this assignment at any time.  Such request shall be forwarded to the Central Office Inmate Monitoring Section.  Actual removal of the CIM assignment will not occur until after approval from the Department of Justice is received.

(2)  The reviewing authority is responsible for determining if removal or modification of any CIM classification other than a Department of Justice Witness Security case is appropriate.  The inmate retains the CIM classification pending a decision by the reviewing authority.

(3)  When an inmate is removed for any reason from a CIM classification (for example, because the reviewing authority either disapproves the CIM classification or approves removal of a CIM classification based on new information), the appropriate staff member shall ensure that the relevant portions of the inmate central file are either removed or, when part of a larger document, are amended to clearly reflect removal of the CIM assignment.  Staff shall notify the inmate of the decision and document any change in the inmate's record, and supportive documentation and the written basis for removal are to be retained in the inmate privacy file.]

9.  [ACTIVITIES CLEARANCE §524.74

a.  Except as provided for in paragraph (b) of this section, the Warden is the clearance authority on all transfers, temporary releases, community activities, and escorted trips.

b.  Witness Security Cases.  Central Office Inmate Monitoring Section staff shall be the clearance authority on all transfers, temporary releases, community activities, and escorted trips for Witness Security cases, except in a medical emergency.  In a medical emergency, the Warden may transfer a Witness Security case to a local hospital for emergency medical care without prior clearance.]

The Inmate Monitoring Section, Central Office (or during non-business hours, the Central Office Duty Officer) is to be notified immediately when a WITSEC inmate receives an emergency escorted medical trip.  Central Office clearance must be obtained prior to any extended period of hospitalization.

Institution authorization to proceed will be entered into SENTRY.  A permanent record of the authorization is to be maintained in the inmate's central file, privacy folder.

10.  [PERIODIC REVIEW §524.75.  The Warden shall ensure that the status of an inmate's CIM assignment is considered at each program review.  When staff believe that removal or modification of the CIM classification is appropriate, the institution's CMC and the appropriate reviewing authority must be notified.  Only the reviewing authority shall determine if removal or modification of the CIM classification is appropriate.]

11.  [APPEALS OF CIM CLASSIFICATION §524.76.  An inmate may at any time appeal (through the Administrative Remedy Program) the inmate's classification as a CIM case.  Inmates identified as Witness Security cases may choose to address their concerns directly to the Inmate Monitoring Section, Central Office, rather than use the Administrative Remedy Program.]

12.  OPERATIONS MANUAL.  Implementation procedures for CIM cases are contained in the CIM Operations Manual.

13.  INSTITUTION SUPPLEMENT.  Each Warden shall develop an Institution Supplement that includes local procedures and identifies staff responsible for an institution's CIM program.  A copy of the Institution Supplement shall be forwarded to the respective Regional Office for approval within 120 days from the issuance of this Program Statement.  The Institution Supplement shall be marked as "Limited Official Use Only."

\s\
Kathleen M. Hawk
Director

THE REMAINDER OF THIS PROGRAM STATEMENT HAS BEEN DESIGNATED AS

* * * LIMITED OFFICIAL USE ONLY * * *

AND CANNOT BE REPRODUCED OR DISTRIBUTED WITHOUT THE CONSENT OF

THE CENTRAL INMATE MONITORING SYSTEM ADMINISTRATOR
CENTRAL OFFICE
WASHINGTON, D.C.

SEE PS 1221.64, DIRECTIVES MANAGEMENT MANUAL FOR DETAILS



GOVERNMENT
EXHIBIT
10

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASPER RIVERA,                          )
                                        )
        Plaintiff                       )        CIVIL ACTION NO. 3:CV-12-1339
                                        )
    vs.                                 )
                                        )
UNITED STATES OF AMERICA                )
                                        )
        Defendant                       )

## DECLARATION OF BRENT TAGGART

1.    I am currently employed by the Federal Bureau of Prisons (hereafter "BOP") as a Deputy

Captain, and am assigned to the United States Penitentiary, Lewisburg, PA (hereafter "USP

Lewisburg").   As a part of my duties and responsibilities, I have access to inmates' records,

electronic data maintained on the BOP's SENTRY computer system,   and BOP Program

Statements.  I certify that the Attachments referenced herein are true and accurate to the best of

my knowledge.


2.      USP Lewisburg has a screening procedure in place to prevent staff from bringing

sharpened instruments, firearms, or other hazardous materials into the institution.  All BOP staff

are required to clear the walk through metal detector at the front entrance of the institution.  All

bags and coats will be x-rayed.  If the staff member can-not clear the metal detector a hand held

metal detector will be used for the alerted area.  If the hand held alerts on an area, but we can be

"reasonably assured" that no unauthorized items are present, we can permit them to enter the

facility.  See Institution Supplement, 5500.11A, Entrance Procedures, page 6 (in part; this is

the only portion of the supplement that addresses x-ray and metal detector procedures for staff)

3.  Inmates at USP Lewisburg (SMU Unit) are afforded the opportunity to participate in recreation five days a week, one hour a day.  Separation records are used to assure inmates who are Separatees are not placed in recreation groups together.  Recreation is voluntary and an inmate can refuse to participate at any time up until the time he is placed in to a recreation pen.

4.  If an inmate identifies a safety concern while being moved to recreation he may be returned to his cell, placed in a holding cell or other area while the concern is looked into.  He will not be placed into a different recreation cage since the separation records for those other inmates have not been reviewed.

5.  Inmates can raise safety/security concerns with any staff member.  If an inmate feels he can-not be housed or participate in recreation with another inmate he can notify staff who will forward the information on (generally to a supervisor such as Lieutenant or Unit Manager) as well as the Special Investigative staff who will investigate the claim.  The inmates will be unofficially be kept away from each other pending the outcome of the investigation.  If the claims are substantiated, then the inmates become official separatees.  Inmates who are involved in an altercation against each other are immediately made separatees.

I declare under penalty of perjury pursuant to 28, United States Code, Section 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this ⟨28⟩ day of February, 2013.

Brent Taggart
Deputy Captain
USP Lewisburg

2



U.S. Department of Justice
**Federal Bureau of Prisons**
U.S. Penitentiary
Lewisburg, PA 17837

# *Institution Supplement*

LEW 5500.11A
Entrance Procedures

March 2011

---

INFORMATION IN THIS SUPPLEMENT IS CONFIDENTIAL. IT IS NOT TO BE PLACED IN THE GENERAL PUBLICATION SCHEDULE FOR THE INMATES' LAW LIBRARY AND IT IS NOT TO BE LEFT WHERE INMATES WOULD HAVE ACCESS TO IT

1. **PURPOSE & SCOPE:**

   It is the policy of this institution to provide reasonable and sufficient control over all pedestrian and vehicle traffic through the Front, Rear, and East entrances in order to insure the security of the institution.

2. **DIRECTIVES AFFECTED:**

   a.          Directive Rescinded:

      IS LEW 5500.09 CH6 (11/30/10)

   b.          Directives Referenced:

      PS 5267.08, Visiting Regulations (5/11/06)
      PS 5500.11, Correctional Services Manual (10/10/03)
      PS 5557.06, Hostage Situation Management (7/18/96)

3. **RESPONSIBILITIES:**

   Front Entrance
      Front Entrance Officer........Day Shift
      Front Tower Officer...........All Shifts
      Message Center................All Shifts
      Control Center Officer........All Shifts

LEW 5500.11A
Entrance Procedures
Page 6

All Bureau of Prisons staff and federal law enforcement personnel, i.e., probation staff and officers, will be required to show proper official identification and be logged in the official log book located in the lobby area. These officials are required to clear the walk-through metal detector, and all bags and coats will be x-rayed. If the Official Visitor cannot clear the walk-through metal detector, a hand-held metal detector will be used for the alerted area. If the hand-held alerts on an area, but we can be "reasonably assured" that no unauthorized items are present, we can permit them to enter the facility. Lockers are provided and located in the lobby to secure all unauthorized items.



**"LIMITED OFFICIAL USE ONLY"**



GOVERNMENT
EXHIBIT
11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASPER RIVERA,                          )
                                        )
            Plaintiff                   )        CIVIL ACTION NO. 3:CV-12-1339
                                        )
      vs.                               )
                                        )
UNITED STATES OF AMERICA                )
                                        )
            Defendant                   )

### DECLARATION OF J. LESHO

1.      I am currently employed by the Federal Bureau of Prisons (hereafter "BOP") as a Correctional Officer, and am assigned to the United States Penitentiary, Lewisburg, PA (hereafter "USP Lewisburg").  As a part of my duties and responsibilities, I have access to inmates' records, electronic data maintained on the BOP's SENTRY computer system, and BOP Program Statements.  I certify that the Attachments referenced herein are true and accurate to the best of my knowledge.

2.      I am familiar with inmates Rivera and Turning-Bear.  Records indicate they were involved in an altercation with each other on June 4, 2010.

3.      Records indicate I was in training on June 4, 2010 (not inside the institution).  I do not recall inmate Rivera raising safety concerns to me prior to the altercation.  If he would have raised safety concerns with me I would have notified the shift Lieutenant and/or the Special Investigative Service ("SIS").

1

I declare under penalty of perjury pursuant to 28, United States Code, Section 1746, that

the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this ___28___ day of February, 2013.

J. Lesho
Correctional Officer
USP Lewisburg

2

**USP LEWISBURG**
Lewisburg, PA
Daily Assignment Roster

Friday June 04, 2010
Page 1

| | | 2 04:00 - 12:00 | | | |
| | | 3 06:30 - 14:30 | 5 07:30 - 15:30 | | |
| Post | Split Shift   1 00:00 - 08:00 | 4 07:00 - 15:00 | 6 08:00 - 16:00 | 7 14:30 - 22:30 | 8 16:00 - 00:00 |



6/7/2010 8:05:31 AM

00003

Friday June 04, 2010



6/7/2010 8:05:32 AM

Friday June 04, 2010



6/7/2010 8:05:32 AM

Friday June 04, 2010

6/7/2010 8:05:33 AM

Friday June 04, 2010



TRAINING

LeshoJ

6/7/2010 8:05:33 AM

Friday June 04, 2010



6/7/2010 8:05:34 AM

Friday June 04, 2010
Page 7



6/7/2010 8:05:34 AM



6/7/2010 8:05:34 AM

Friday June 04, 2010
Page 9

Ops Lt. Evening Watch Signature:

Captain's Signature:

6/7/2010 8:05:34 AM



GOVERNMENT
EXHIBIT
12

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASPER RIVERA,                          )
                                        )
                Plaintiff               )       CIVIL ACTION NO. 3:CV-12-1339
                                        )
        vs.                             )
                                        )
UNITED STATES OF AMERICA                )
                                        )
                Defendant               )

## DECLARATION OF R. HARVEY

1.      I am currently employed by the Federal Bureau of Prisons (hereafter "BOP") as a
Correctional Officer, and am assigned to the United States Penitentiary, Lewisburg, PA
(hereafter "USP Lewisburg").   As a part of my duties and responsibilities, I have access to
inmates' records, electronic data maintained on the BOP's SENTRY computer system, and BOP
Program Statements.  I certify that the Attachments referenced herein are true and accurate to the
best of my knowledge.

2.      I am familiar with inmates Rivera and Turning-Bear.   Records indicate they were
involved in an altercation with each other on June 4, 2010.

3.      Records indicate I was not working on June 4, 2010 (day off).  I do not recall inmate
Rivera raising safety concerns to me prior to the altercation.   I had many conversations with
Rivera prior to the incident and recall him stating he did not like to go to recreation with Native
American inmates.  He never expressed safety concerns to me and I tried to accommodate his
preference when resources permitted.  There were times that the only available place to put him
was in a recreation pen with a Native American.  Participation in recreation is voluntary.  An

inmate can refuse to participate in recreation at any time up when he is placed into the recreation pen.  If he would have raised safety concerns with me I would have notified the shift Lieutenant and/or the Special Investigative Service ("SIS").

I declare under penalty of perjury pursuant to 28, United States Code, Section 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this ___1st___ day of March, 2013.

R. Harvey
Correctional Officer
USP Lewisburg

2

**USP LEWISBURG**
Lewisburg, PA
**Daily Assignment Roster**

Friday June 04, 2010

Page 1

| Post | Split Shift | 1 00:00 - 08:00 | 2 04:00 - 12:00 3 06:30 - 14:30 4 07:00 - 15:00 | 5 07:30 - 15:30 6 08:00 - 16:00 | 7 14:30 - 22:30 | 8 16:00 - 00:00 |
|------|-------------|-----------------|----------------|----------------|----------------|----------------|



6/7/2010 8:05:31 AM

Friday June 04, 2010



6/7/2010 8:05:32 AM

Friday June 04, 2010



6/7/2010 8:05:32 AM

Friday June 04, 2010

****Back Page Categories****

DAY OFF

HarveyR

Friday June 04, 2010



6/7/2010 8:05:33 AM

00007

Friday June 04, 2010



6/7/2010 8:05:34 AM

00008

Friday June 04, 2010
Page 7



6/7/2010 8:05:34 AM

00009



6/7/2010 8:05:34 AM

Ops Lt. Evening Watch Signature:

Captain's Signature:

6/7/2010 8:05:34 AM

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASPER RIVERA,** | : | No. 3:CV-12-1339 |
| **Plaintiff** | : | |
| | : | |
| | : | **(Kosik, J.)** |
| **V.** | : | **(Carlson, M.J.)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Defendant** | : | **Filed Electronically** |

### CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on March 8, 2013, she served a copy of the attached

### SUPPLEMENTAL EXHIBITS IN SUPPORT OF
### THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

via the Court's electronic case filing system to the electronic mail address stated below:

Addressee:

Marianne Sawicki, Esquire
2530 Blair Avenue
Huntingdon, PA    16652
MarianneSawicki@verizon.net

s/ Michele E. Lincalis
Michele E. Lincalis
Supv. Paralegal Specialist