# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JASPER RIVERA,

        Plaintiff,

        v.

UNITED STATES OF AMERICA,

        Defendant.

Civil Action No. 3:12-CV-1339

(Judge Kosik)

FILED
SCRANTON
OCT 0 2 2013
PER_____
DEPUTY CLERK

## MEMORANDUM

Before this court are defendant's objections to a Report and Recommendation issued by United States Magistrate Judge Martin C. Carlson. For the reasons which follow, the defendant's summary judgment motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff, now an inmate at the United States Penitentiary ("USP") Big Sandy in Inez, Kentucky, brought a claim pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* ("FTCA"), after being stabbed approximately fifteen times by a fellow inmate, Nicholas Turning Bear, in an exercise cage at USP Lewisburg in Lewisburg, Pennsylvania. Plaintiff filed his complaint *pro se* on July 11, 2012, after exhausting his administrative remedies. Plaintiff seeks $12,000 in damages and claims that prison officials failed to protect him from Turning Bear. Specifically, plaintiff avers that: (1) he should have been separated from Turning Bear and not placed in the same recreation

1

JASPER RIVERA,

    Plaintiff,

   v.

UNITED STATES OF AMERICA,

    Defendant.

:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 3:12-CV-1339

(Judge Kosik)

## MEMORANDUM

Before this court are defendant's objections to a Report and Recommendation issued by United States Magistrate Judge Martin C. Carlson. For the reasons which follow, the defendant's summary judgment motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff, now an inmate at the United States Penitentiary ("USP") Big Sandy in Inez, Kentucky, brought a claim pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* ("FTCA"), after being stabbed approximately fifteen times by a fellow inmate, Nicholas Turning Bear, in an exercise cage at USP Lewisburg in Lewisburg, Pennsylvania. Plaintiff filed his complaint *pro se* on July 11, 2012, after exhausting his administrative remedies. Plaintiff seeks $12,000 in damages and claims that prison officials failed to protect him from Turning Bear. Specifically, plaintiff avers that: (1) he should have been separated from Turning Bear and not placed in the same recreation

cage as him; (2) staff breached their duty to search inmates and their cells for weapons; and (3) staff unreasonably delayed in breaking up the assault. (Id.)

On October 24, 2012, the United States moved for summary judgment (Doc. 16), and after being granted an extension of time, filed a brief in support of its motion and a statement of facts on December 5, 2012. (Docs. 26, 27.) On January 2, 2013, *pro bono* counsel entered her appearance on plaintiff's behalf (Doc. 33) and filed a brief in opposition to the motion on February 8, 2013, within the extension of time granted to plaintiff. (Doc. 38.) Plaintiff also filed a counterstatement of facts pursuant to Local Rule 56.1. (Doc. 40.) The United States filed a reply brief on March 8, 2013 (Doc. 43), to which the plaintiff filed a sur-reply brief on March 15, 2013 (Doc. 47).[1] The motion for summary judgment was fully briefed and ripe for disposition.

On, August 12, 2013, Magistrate Judge Martin Carlson filed a Report and Recommendation granting in part and denying in part the United States' motion for summary judgment. (Doc. 69.) The Magistrate Judge granted the United States's

---

[1] The plaintiff moved to strike the defendant's reply brief, arguing that it contained a number of misrepresentations and objectionable argument. (Doc. 47.) The Magistrate Judge denied plaintiff's motion to strike and construed it as a sur-reply brief. (Doc. 58.) On April 9, 2013, plaintiff also filed a motion for sanctions (Doc. 49) and a brief in support on April 22, 2013 (Doc. 56). On May 9, 2013, the United States filed a brief in opposition of the motion to strike (Doc. 61), and the plaintiff filed a reply brief on May 21, 2013 (Doc. 65). Plaintiff seeks sanctions, in the form of attorney fees, in accordance with Federal Rule of Civil Procedure 11 and the Court's inherent power to impose sanctions. The Court has considered the parties' briefs and the record as a whole, and find that sanctions are not appropriate in the instant case. The Court finds that the United States' reply brief was not "frivolous, legally unreasonable, or without factual foundation." Doering v. Union Cnty. Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988) (quoting Lieb v. Topstone Indus., Inc., 788 F.2d 151, 157 (3d Cir. 1986)). Additionally, the Court does not find a showing of bad faith. Therefore, plaintiff's motion for sanctions is denied under both Rule 11 and the Court's inherent power to impose sanctions.

motion for summary judgment with respect to the claim that prison officials negligently failed to timely intervene in the assault against the plaintiff after it began. The Magistrate Judge denied the United States' motion for summary judgment with respect to the claim that prison officials were negligent in placing the plaintiff and Turning Bear in the same recreation cage. Additionally, summary judgment was denied with respect to the claim that prison officials were negligent when they failed to follow a prison policy that required prison staff to subject Turning Bear to a metal detector search when taken out of his cell, before being placed in the recreation cage with the plaintiff.

After being granted an extension of time to file objections (Doc. 72), the United States filed two objections to the Magistrate Judge's Report and Recommendation. (Doc. 74.) The United States objected to the Magistrate Judge's recommendation that summary judgment be denied with respect to USP Lewisburg staff's decision to place plaintiff and Turning Bear in the same recreation cage. The United States also objected to the Magistrate Judge's recommendation that summary judgment be denied with respect to the claim that prison officials were negligent by failing to follow prison policy that requires staff to use a metal detector on all inmates when they are removed from their cells. We review the United States' objections and the Magistrate Judge's Report and Recommendation accordingly.

## II. STATEMENT OF FACTS

Plaintiff claims that shortly after his arrival at USP Lewisburg in April 2009, he participated in a Quay Hearing, which is used by the prison administration to identify an inmate's potential enemies so prison officials can make informed decisions on cell and recreation cage placements. Plaintiff claims he informed the prison officials at the Quay

3

Hearing of his "ex-gang" status. At the time of the incident, the Central Inmate Monitoring System ("CIMS") indicated the plaintiff was a Tango Associate and Turning Bear had no gang affiliation. (Doc. 43, Def's Reply Br., Ex. 9, Decl. of Fosnot ¶¶ 10-11.)

Plaintiff describes the level of interaction between inmates while at USP Lewisburg, which he states has been predominantly converted into a Special Management Unit ("SMU"). He states that inmates are confined to their cells 24 hours a day with one hour of recreation five days a week. During the recreation time, inmates are put into a recreation cage with usually four to six other inmates whose placements are pre-arranged by staff.

Plaintiff states that he was placed in recreation cages with Turning Bear during the month of April 2010. Plaintiff claims that Turning Bear is in a gang, albeit a different gang than the one from which plaintiff has disassociated. On or about April 30, 2010, plaintiff avers that Turning Bear confronted him about his "ex-gang" status, and plaintiff confirmed that status. As a result, plaintiff claims that he and Turning Bear agreed they could no longer be in a recreation cage together because possible violence might ensue. Plaintiff avers that both he and Turning Bear made the prison staff aware that they could no longer be placed in the same recreation cage and that they should be separated. Plaintiff states that as a result, he and Turning Bear were placed in separate recreation cages for a couple of weeks.

On June 4, 2010, staff again placed plaintiff and Turning Bear in the same recreation cage. Plaintiff claims that at the end of the recreation period, as plaintiff was about to exit the recreation cage, Turning Bear attacked him from behind. Plaintiff

4

further states that Turning Bear punched, kicked, and attacked plaintiff with an approximately seven inch metal shank. Plaintiff claims that several staff were present at the time of the attack.

It is undisputed that Correctional Officer ("CO") M. Raker saw the plaintiff being assaulted and immediately called for assistance and ordered Turning Bear to stop. (Doc. 27, Def's SMF, ¶¶ 47 - 48.) Staff made verbal commands for Turning Bear to stop assaulting Plaintiff, but he did not comply. Plaintiff claims that Turning Bear pinned plaintiff down on the ground and stabbed him with a seven inch metal shank approximately fifteen times in the face, chest, stomach, and back in the presence of numerous prison staff. The stabbing eventually stopped when prison officials used their pepper ball guns to subdue Turning Bear. Plaintiff received multiple stab wounds and his injuries included a punctured lung. He was transported to Geisinger Medical Center and remained hospitalized for six days. On June 7, 2010, the plaintiff and Turning Bear were "loaded" on the Bureau of Prison's ("BOP") computerized SENTRY program as separation inmates. Prior to this attack, plaintiff and Turning Bear were not listed as separation inmates.

Rivera brought his negligence action under three theories. First, he alleged that the government negligently put him in a recreation cage with Turning Bear. Second, he alleged that the fact that Turning Bear was able to attack him with a seven inch metal shank in the recreation cage is sufficient to establish negligence under the theory of res ipsa loquitur. Third, he alleged that the government negligently responded to the attack by not responding "immediately and effectively."

The United States argues that the discretionary function exception to the FTCA

5

applies as to the decision to put the plaintiff and Turning Bear in the same recreation cage. Additionally, the United States argues that they followed proper protocol by using a metal detector on all inmates once they were removed from their cells and before placement into the recreation cages; therefore, the plaintiff cannot prove breach and causation. The United States further contends that prison officials did respond to the assault "immediately and effectively."

This court has jurisdiction pursuant to 28 U.S.C. § 1346(b)(1), which provides district courts with exclusive jurisdiction over civil actions against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

### III. STANDARD OF REVIEW

When objections are filed to a Report and Recommendation of a Magistrate Judge, we must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In doing so, we may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); Local Rule 72.31. Although our review is *de novo*, we are permitted to rely upon the Magistrate Judge's proposed recommendations to the extent we, in the exercise of sound discretion, deem proper. See United States v. Raddatz, 447 U.S.

6

667, 676 (1980); see also Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

If no objections are filed to a finding in a Magistrate Judge's Report and Recommendation, the plaintiff is not statutorily entitled to a *de novo* review of his claims. 28 U.S.C.A. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-53 (1985). Nonetheless, the usual practice of the district court is to give "reasoned consideration" to a magistrate judge's report prior to adopting it. Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing Anderson, 477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case. Id. In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party. Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the non-movant's allegations as true and resolve any conflicts in his favor. Id. (quoting Gans v. Mundy, 762 F.2d 338, 340 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985)); Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). It then follows that summary judgment is appropriate if the nonmoving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## IV. DISCUSSION

In the case at hand, the United States made two objections to the Magistrate Judge's Report and Recommendation, thus, requiring a *de novo* review of those issues. First, the United States objects to the Magistrate Judge's ruling that there was a genuine issue of material fact as to whether the discretionary function exception to the FTCA applies with respect to USP Lewisburg staff's decision to place the plaintiff and Turning Bear in the same recreation cage.

Under the FTCA, the United States is liable in tort claims "in the same manner and to the same extent as a private individual under the circumstances," except with respect to liability for interest prior to judgment or for punitive damages. 28 U.S.C. §

8

2674. "The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions . . . .'" Sosa v. Alverez-Machain, 542 U.S. 692, 700 (2004) (quoting Richards v. United States, 369 U.S. 1, 6 (1962)); CNA v. United States, 535 F.3d 132, 138 (3d Cir. 2008). Under the FTCA, prisoners are permitted to recover damages for personal injuries suffered during confinement as a result of "negligent acts of government employees acting within the scope of their employment." United States v. Rinaldi, 460 Fed. App'x. 80, 81 (3d Cir. 2012); see United States v. Muniz, 374 U.S. 150 (1963).

The FTCA is subject to exceptions as noted in 28 U.S.C. § 2680. At issue in this case is the discretionary function exception set forth in section 2680(a), which states that there is no claim under the FTCA if a claim is " . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." The discretionary function "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." S.R.P. v. United States, 676 F.3d 329, 332 (3d Cir. 2012) (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984)). If the discretionary function exception applies, claims that fall within the exception must be dismissed for lack of subject matter jurisdiction. Garcia v. United States, 896 F. Supp. 467, 471 (E.D. Pa. 1995) (citing Attallah v. United States, 955 F.2d 776, 782 (1st Cir. 1992). Additionally, the United States bears the burden of proving the applicability of the discretionary function exception. Merando v. United States, 517 F.3d 160, 164 (3d Cir. 2008) (citing Cestonaro v. United States, 211 F.3d

749, 756 n. 5 (3d Cir. 2000)).

Under the FTCA, the court must first identify the conduct at issue. Id. at 165.

The court must then determine whether the discretionary function exception immunizes

the United States from liability by applying the two-part Mitchell inquiry:

> First, a court must determine whether the act involves an "element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow....'" Id. (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)); see also Cestonaro v. United States, 211 F.3d 749, 753 (3d Cir. 2000).
>
> Second, even if the challenged conduct involves an element of judgment, the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." United States v. Gaubert, 499 U.S. 315, 322-23 (1991) (quoting United States v. Varig Airlines, 467 U.S. 797, 813 (1984)). The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id. at 325; see also Cestonaro, 211 F.3d at 753; Sea-Land Serv. Inc. v. United States, 919 F.2d 888, 892 (3d Cir. 1990).

Mitchell v. United States, 225 F.3d 361, 363-64 (3d Cir. 2000). Therefore, "[o]nce a

policy decision has been made, negligence in its non-discretionary execution can give

rise to FTCA liability without jeopardizing the interests the discretionary function

exception is designed to protect." Fisher Brothers Sales, Inc. v. United States, 46 F.3d

279, 288 (3d Cir. 1995).

## A. FTCA Claim - Negligence Based on Non-Use of Metal Detector

We first examine the United States' objection to the Magistrate Judge's

recommendation that the plaintiff presented enough evidence to establish a prima facie claim of negligence against prison officials regarding their search for weapons. The United States argues that the plaintiff has failed to establish breach of its duty to use a metal detector on Turning Bear before being placed into the recreation cage with the plaintiff.

For a negligence claim under the FTCA, a court will apply "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). As the act took place in Lewisburg, Pennsylvania, to establish a prima facie claim of negligence under Pennsylvania law, the plaintiff must prove the following elements: "(1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." Krentz v. Consol. Rail Corp., 910 A.2d 20, 27 (Pa. 2006) (citing Phillips v. Cricket Lighters, 841 A.2d 1000, 1008 (Pa. 2003)).

Plaintiff argues that the doctrine of res ipsa loquitur is applicable in this case. The doctrine of res ipsa loquitur provides that the circumstances surrounding an injury may give rise to an inference of negligence. Quinby v. Plumsteadville Family Practice, 907 A.2d 1061, 1071 (Pa. 2006). Pennsylvania has adopted section 328D of the Restatement (Second) of Torts, which provides that an inference that the plaintiff's injury was caused by the defendant's negligence, can be drawn when (1) "the event is of a kind which ordinarily does not occur in the absence of negligence;" (2) "other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence;" and (3) "the indicated negligence is within the scope of the defendant's duty to the plaintiff." See Tait v. Armor Elevator Co., 958 F.2d

11

563, 571- 72 (3d Cir. 1992) (citing <u>Gilbert v. Korvette, Inc.</u>, 327 A.2d 94, 100 (Pa. 1974)). As the doctrine of res ipsa loquitur is a circumstantial evidence doctrine usually reserved for trial, we will examine whether the plaintiff has raised sufficient facts to avoid summary judgment.

First, it is clear a duty exists, and the United States in its objection to the Magistrate Judge's Report and Recommendation, does not appear to contest this element. Although the controlling federal regulation gives prison officials a level of discretion to determine what method of search to use on an inmate, stating that, "[s]taff shall employ the least intrusive method of search practicable, as indicated by the type of contraband and method of suspected introduction," discretion was taken away from the USP Lewisburg staff by way of Special Post Orders for Z-Block. 28 C.F.R. § 552.10. The directive in the Special Post Order provides that "[a]ll inmates who are removed from the cell **will be pat searched and a hand-held metal detector utilized for the screening.**" (Doc. 27, Def. SMF, Ex. 1, Attach. F, Special Post Orders for Z-Block at 80) (emphasis added.) Applying the two-part <u>Mitchell</u>, *supra.*, inquiry, we find that this act, pat searching and conducting a metal detector search on inmates taken out of their cells, does not involve an element of choice. Therefore, the discretionary function exception is not applicable to this particular claim.

Further, it is undisputed that Turning Bear stabbed plaintiff approximately fifteen times with a seven inch metal shank. Whether Turning Bear was subjected to a metal detector search after exiting his cell and before being taken to the recreation cage with the plaintiff is disputed. Since we find that the policy to search inmates with a metal

12

detector imposes a mandatory duty upon the prison staff, this dispute of fact is material. Therefore, we will adopt the Report and Recommendation of the Magistrate Judge on this point. Viewing the evidence in the light most favorable to the plaintiff, we find that sufficient facts have been raised to avoid summary judgment on this claim. Defendant's request for summary judgment on plaintiff's claim of negligence for the non-use of a metal detector search on Turning Bear will be denied.

## B. FTCA Claim - Failure to Separate Rivera from Assailant

The United States also objects to the Magistrate Judge's report, recommending that summary judgment be denied with respect to plaintiff's claim that defendant was negligent in placing the plaintiff and Turning Bear in the same recreation cage. The United States argues that the discretionary function exception applies to the prison staff's decision to place the plaintiff and Turning Bear in the same recreation cage, which is the conduct at issue. Applying the two-part Mitchell inquiry, we must first determine whether this act involves an "element of judgment or choice."

The governing statute for the BOP's conduct in this matter is governed by 18 U.S.C. § 4042(a)(2-3), which provides that the BOP shall provide for the "safekeeping" and "protection" of inmates in their custody. On its own, it has been held that this statute gives BOP officials discretion as to how to provide "safekeeping" and "protection," thus, exempting BOP officials from liability under the FTCA. See Rinaldi, 460 F. App'x at 81-82 (finding the implementation of BOP's duties of "safekeeping" and "protection" within the BOP officials' discretion when there was no other ". . . federal

statute, regulation or policy that require[d] the BOP to take a particular course of action to ensure an inmate's safety from attacks by other inmates."); see also Castillo v. United States, 166 F. App'x 587, 589 (3d Cir. 2006) (finding an integration plan of two rival gangs shielded by the discretionary function exception when the prison had no official policy addressing the integration of rival gangs into the general prison population). The Eleventh Circuit has found that "even if § 4042(a) imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception." Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998).

Plaintiff argues that there are additional regulations and policies that take away the prison staff's discretion when prison staff are notified of safety concerns requiring the separation of inmates. First, plaintiff points to the federal regulation governing CIM Assignments, 28 C.F.R. § 524.72, which characterizes certain inmates as separatees or members of "Disruptive Groups" and Security Threat Groups. Inmates who are labeled as separatees ". . . may not be confined in the same institution (unless the institution has the ability to prevent any physical contact between the separatees) with other specified individuals who are presently housed in federal custody or who may come into federal custody in the future." 28 C.F.R. 524.72(f). When classifying an individual as a separatee, the BOP is directed to consider factors, which include but are not limited to "testimony provided by or about an individual [ . . . ], and whether the inmate has exhibited aggressive or intimidating behavior towards other specific individuals, either in the community or within the institution." Id.

The United States argues that at the time of the altercation, plaintiff and Turning

14

Bear were not assigned as separatees in CIMS. Additionally, there was no notation in CIMS that Turning Bear was affiliated with a gang. Plaintiff argues that he and Turning Bear should have been separated because there was gang animosity between them, and they both notified CO Harvey of this fact. Plaintiff argues that the CIM case management coordinator was negligent in not assigning plaintiff and Turning Bear as separation inmates. The decision how to best protect inmates is left to the discretion of BOP officials. As mentioned above, section 524.72(f) mentions non-exhaustive factors for BOP officials to consider in deciding whether to classify an individual to a separation assignment. "[W]hether an inmate has exhibited aggressive or intimidating behavior towards other specific individuals," is a factor, among others, to consider. We find the language of the regulation discretionary as it does not mandate separation when an inmate has exhibited aggressive or intimidating behavior. Instead, CIM assignments involve an element of choice and judgment.

The plaintiff also points to the declaration of Deputy Captain Brent Taggart, who states:

> Inmates can raise safety/security concerns with any staff member. If an inmate feels he can-not [sic] be housed or participate in recreation with another inmate, he can notify staff who will forward the information on (generally to a supervisor such as a Lieutenant or Unit Manager) as well as the Special Invesgative staff who will investigate the claim. The inmates will be unofficially [. . . ] kept away from each other pending the outcome of the investigation. If the claims are substantiated, then the inmates become official separatees. Inmates who are involved in an altercation against each other are immediately made separatees.

(Doc. 43, Ex. 10 at ¶ 5.) Additionally, declarations by CO J. Lesho and CO R. Harvey state that if an inmate, such as the plaintiff, raised safety concerns to them, they would have notified the shift Lieutenant and/or the Special Investigative Service ("SIS"). (Doc.

15

43, Def's Reply Br., Ex. 11 at ¶ 3; Ex. 12 at ¶ 3.) Plaintiff was not able to point to a written prison policy memorializing the declarations of Deputy Captain Taggart, CO Harvey, and CO Lesho.

The United States argues that Deputy Captain Taggart's declaration is not sufficient to establish policy, and we agree. This case is distinguishable from Gray v. United States, 486 F. App'x 975 (3d Cir. 2012), where the Third Circuit Court of Appeals held that the discretionary function exception did not apply when the plaintiff, who was assaulted with a razor, was able to point to a written, mandatory policy in the Special Management Unit ("SMU") Inmate Handbook requiring the collection of razors after inmates shower. In this case, plaintiff does not direct us to a prison policy that memorializes Deputy Captain Taggart's declaration. Without more, a statement reciting a course of action from an employee who is unable to create prison policy, cannot be considered to create prison-wide policy, imposing liability upon the United States.

Therefore, we find that the government met the first part of the two-part Mitchell inquiry because there is a federal statute, 18 U.S.C. § 4042(a)(2-3), and a federal regulation, 28 C.F.R. § 524.72, that does not direct a specific course of conduct, but instead gives the actors discretion.

Turning to the second part of the two-part Mitchell inquiry, we find that the discretionary judgment conferred upon prisons as the best way to "protect one inmate from the threat of attack by another, 'is of the kind of judgment the discretionary function exception was designed to shield.'" Donaldson v. United States, 281 F. App'x 75, 77 (3d Cir. 2008) (quoting Mitchell, 225 F.3d at 363;) see, e.g., Rinaldi, 460 F. App'x at 82) (holding that the judgment of the prison to not separate the plaintiff from his

16

assailment prior to an attack, when the prison knew the assailant was violent and mentally unstable, was the type of decision the discretionary function exception was supposed to protect); Cohen v. United States, 151 F.3d 1338 (11th Cir. 1998) (finding that security classifications of inmates are within the type of decisions the discretionary function exception was designed to shield from second-guessing).

In this case, plaintiff maintains that he and Turning Bear informed CO Harvey that they could not be placed in the same recreation cage due to the violence that may ensue as a result of plaintiff being an "ex-gang" member and Turning Bear being a current gang member. Plaintiff states that after bringing the need for separation from Turning Bear to prison officials' attention, he was placed in a recreation cage only with his cellmate. In early June, the plaintiff states he was again placed in the same recreation cage as Turning Bear. Fellow inmate, Todd Dunham, declares that as a result, Turning Bear notified CO Harvey that it was dangerous for he and the plaintiff to be in the same recreation cage together. (Doc. 40, Pl's CSMF, Ex. A.) Dunham also states that CO Harvey spoke with Dunham about identifying an alternative recreation cage for the plaintiff.

The United States puts forth declarations by CO Harvey and CO Lesho, who both state, "I do not recall inmate Rivera raising safety concerns to me prior to the altercation." (Doc. 43, Def's Reply Br., Ex. 11 at ¶3; Ex. 12 at ¶3.) CO Harvey goes on to state:

> I had many conversations with Rivera prior to the incident and recall him stating he did not like to go to recreation with Native American inmates. He never expressed safety concerns to me, and I tried to accommodate his preference when resources permitted. There were times that the only available place to put him was in a recreation pen with a Native American.

(Id., Ex. 12 at ¶3.) We find this dispute of facts immaterial because it was within the prison's discretion to place plaintiff and Turning Bear in the same recreation cage since they were not classified as separation inmates and Deputy Captain Taggart's declaration is not enough to show a mandatory policy that imposes liability. We also find that this type of policy decision is the kind of judgment the discretionary function was intended to protect. Additionally, we find that before the attack, the decision to assign plaintiff and Turning Bear as separation inmates involved an element of judgment and choice, and is of the type of policy decision the discretionary function exception was designed to protect.

We disagree with the Magistrate Judge's recommendation that genuine issues of material fact exist as to whether the United States was negligent in not separating the plaintiff and Turning Bear before the attack took place and whether plaintiff informed correctional officers of his safety concerns. Because we find that the two-part Mitchell inquiry has been met, the discretionary function exception applies, and this court has no subject matter jurisdiction over the claim. Accordingly, summary judgment is granted on this claim.

## C. FTCA Claim - Negligence Based on Untimely Intervention of Assault

There was no objection to the Magistrate Judge's recommendation that summary judgment be granted with respect to the plaintiff's claim that prison officials negligently failed to timely intervene in the assault after it began. Accordingly, we give "reasoned

consideration" to the Magistrate Judge's report. Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).

Specifically, the Magistrate Judge found that response to an emergency situation is left to the prison staff's discretion and judgment, as well as to the orders of superior staff officers. Section 10(c) of the Standards of Employee Conduct states, "Because failure to respond to an emergency may jeopardize the security of the institution, as well as the lives of staff or inmates, it is mandatory that employees respond immediately and effectively to all emergency situations." The Magistrate Judge found that staff responded within five minutes of Turning Bear assaulting the plaintiff. Staff ordered Turning Bear to cease and kneel down, and when he failed to immediately comply, Deputy Captain Snider fired two rounds from the pepper ball launcher. Turning Bear then complied and was subdued, placed in handcuffs, and removed from the recreation cage.

After reviewing the record, we agree with the Magistrate Judge that the prison's policy on responding to an emergency situation bestows discretion upon the prison staff to choose how best to respond. The policy states that they will respond "immediately and effectively to all emergency situations." Additionally, their training slides indicate:

> Under no circumstances should staff attempt to enter an inmate's cell, prior to a Lieutenant arriving on the emergency scene. The Lieutenant will assess the nature of the emergency and, when sufficient staff have responded, the Lieutenant will direct the opening of the cell/recreation pen door. The Lieutenant will not order the opening of the door until at least two staff members are present on the scene for each inmate involved in an emergency situation.

(Doc. 27, Def.'s SMF, Ex. 1, Attach. G at 96.) Although the plaintiff maintains that the prison staff stood idly by and watched the attack, the prison staff had discretion to

19

choose how to respond "immediately" and "effectively" as evidenced by their prison policies. We agree that the plaintiff has not presented a triable claim that staff were negligent in responding to the attack. Therefore, summary judgment is appropriate with respect to this particular claim, and we will adopt the Report and Recommendation of the Magistrate Judge.

## V. Conclusion

For the reasons set forth above, we will adopt in part and deny in part the Magistrate Judge's recommendation that the United States' motion for summary judgment (Doc. 16) be granted in part and denied in part. An appropriate order is attached.